No. 13,585.

DIKEOU *v.* PEOPLE IN THE INTEREST OF CASSIDENTI, A MINOR.
(38 P. [2d] 772)

Decided October 15, 1934. Rehearing denied December 3, 1934.

538

Mr. Jacob L. Sherman, Messrs. Alter & Upton, for plaintiff in error.

Mr. Paul P. Prosser, Attorney General, Mr. Pierpont Fuller, Jr., Assistant, Mr. Charles H. Queary, Assistant, for the people.

Mr. George L. Longfellow, Jr., for petitioner.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiff in error, hereinafter referred to as defendant, was found guilty of contributing to juvenile dependency in failing to support his minor child and judgment was entered against him accordingly directing that he pay a certain sum per month for such support. To review that judgment he prosecutes this writ and asks that it be made a supersedeas. The principal question litigated below was the parentage of said child. Its mother, the petitioner there, charged that defendant was the father. This he denied. The assignments of error are: (1) That the evidence was insufficient; (2) that the juvenile court was without jurisdiction.

The petition was signed by Lena Cassidenti, the mother and so hereinafter referred to, and one Louise De Leo, her next friend. It was filed February 20, 1933. It charged that defendant was the father of the child; that "it has not proper parental care"; that defendant "has failed and refused to support or care for it"; that he had "knowledge of its condition of dependency"; and that he "is able to support and care for it." Summons was ordered issued but the record is silent as to service. However, defendant appeared in person and by counsel, made various motions and entered into various stipulations relating to the trial and participated therein, all without raising any question of service. Trial was three times continued on defendant's motion. May 17, 1933, the court found petitioner unable to employ counsel and appointed George Longfellow, Jr., to represent her, and, by agreement of counsel, set the cause for trial May 31, following. Trial was then had to a jury which disagreed and was discharged. The cause was again tried September 28, 1933. At the close of plaintiff's evidence, and again at the close of all the evidence, defendant moved for a nonsuit, which motions were overruled. The jury was

instructed September 30. No tendered instruction was refused, and the twelve given were agreed to. This jury returned two verdicts. By the first it found defendant was the father of the child, by the second it found him "guilty of contributing to the dependency of said child." ▮▮ The child in question was born January 13, 1933, hence was five weeks old when the petition was filed. On April 8, 1932, the alleged date of its conception, petitioner was 17 years old and defendant about 30. In August, 1932, defendant married another woman. Petitioner testified that defendant was the father of the child. Her testimony that he knew of its birth, that she demanded financial help from him, that he refused it, that she was living with the child at the home of her parents, that she and they had neither employment nor resources, and that all were being supported by the county, or by charity, is undisputed. The "age of consent" in this state is 18. C. L. 1921, p. 1735, §6689. One who causes or contributes to the neglect or dependency of a child, or does any act to directly produce or contribute to the conditions which render a child dependent, may be proceeded against under the law here invoked. C. L. 1921, p. 364, §644.

▮ 1. Defendant's contention, under his first assignment, is that there is no evidence that the child in question was dependent, because, considering its age and requirements it may well be that its wants were satisfied, and all necessary care furnished, by the mother; and that, in any event, dependence was an essential fact to be submitted to, and found by, the jury, and that this was not done. It is further argued that, considering the widespread unemployment and distress, the fact that a child's mother is supported by public agencies, or private charity, is no evidence that its father is so contributing to its dependency as to be amenable therefor.

We think the answer is clear. A child may obtain all its necessary sustenance from its mother, yet if she is without means of support and must be cared for by char-

ity, the child is clearly dependent. If the father is able to aid her but refuses, and particularly if, as here, that refusal is grounded upon denial of parentage, just as clearly the father is contributing to the child's dependency.

As above indicated this record discloses that almost the sole question considered by either side on the trial was the question of parentage. Proof of dependency was a mere formal matter, established about as venue ordinarily is where no point is made of it. But the evidence thereof is sufficient and uncontradicted, and the jury could not have found defendant guilty of contributing thereto without having first determined that dependency existed. We think the verdict sufficient under the state of the record.

On this assignment counsel for defendant rely principally upon In Re Dependency of Stamp, 198 Ia. 1136, 199 N. W. 1007. There neither the marriage of the parties nor the parentage of the child, a girl then ten years of age, was disputed. The record disclosed that the girl was well cared for by her mother and there was no evidence that the mother was an object of charity. That case does not help us here.

Petitioner's testimony was positive and unequivocal that defendant was the father of the child, and defendant's just as positive and unequivocal to the contrary. Neither can be said to be without considerable corroboration. That there was perjury committed is beyond question. Where the truth lay was solely for the jury and that we are powerless to disturb its finding is too well established to justify the citation of authority.

2. Under the assignment relating to jurisdiction the following contentions are made: (a) Juvenile courts have no authority to determine parentage; (b) if defendant was the father of the child he was guilty of rape and should have been prosecuted therefor; this judgment is based upon his guilt of that crime and juvenile courts have no jurisdiction in a rape case; (c) if the question

was one of nonsupport defendant should have been proceeded against under section 5566, page 1496, C. L. 1921; and if of disputed parentage he should have been proceeded against under sections 6296-6301, page 1644, Id., relating to bastardy; (d) summons should have been issued and served on defendant, and the cause should have been conducted by the district attorney.

■ a. Juvenile courts, in proceedings such as this, are authorized to determine the question of dependency, and, if found, to determine who is responsible therefor, or who has contributed thereto, and to enforce their findings by judgment and execution, or by the taking of a bond conditioned for the performance of the duty. It is immaterial that the statutes do not specifically confer authority to determine the question of parentage. The law is to be enforced where the duty exists. The duty usually rests upon parents and the placing of responsibility involves the determination of relationship. Fatherhood is often denied even where marriage exists. Jurisdiction to determine parentage, in such cases, is not only conferred by necessary implications, but the legislative intent is made clear by section 650, Id., which provides: "This act shall be liberally construed * * * for the purpose of the protection of the child from neglect or omission of parental duty toward the child by its parents."

■■ b. True, the juvenile court has no jurisdiction in a rape case. *Abbott v. People,* 91 Colo. 510, 16 P. (2d) 435. But this is a civil case. That an alleged rape was necessarily involved is immaterial. Defendant is not here found guilty of it and no criminal penalty can be imposed upon him under this judgment. His fatherhood is here the material point. That it arose from the commission of a rape does not paralyze the court nor demand that the determination of civil liability await the outcome of a criminal trial. In the latter he might be acquitted because of the failure of the evidence to convince a jury beyond a reasonable doubt. While in the former a verdict might go against him because proof is required only

by a preponderance of the evidence. One may sue in justice court for $100 civil damages arising from an assault. The fact that the assault was one involving an intent to commit murder cannot deprive the court of its jurisdiction to render judgment for damages.

c. It may often happen in a juvenile delinquency proceeding, and must almost necessarily happen if the action involves dependency, that the question of nonsupport could be litigated under said section 5566, C. L. 1921. It is equally true that if, in such a proceeding, a defendant is charged with the duty of supporting a child because he is its father and he denies the parentage, the question could be litigated under said sections 6296-6301, C. L. 1921. But a given act may constitute an offense under both federal and state statutes, or under state statutes and a city ordinance. The one is in no sense dependent upon the other. We have held that, although a bastardy prosecution under one statute is barred because not brought in time, an action may still be maintained under another statute for failure to support the illegitimate child. *Wamsley v. People,* 64 Colo. 521, 173 Pac. 425.

d. Since, if not served, defendant voluntarily appeared, and since the record discloses no objection by him to the prosecution of this cause by the attorney appointed by the court and no injury to him by reason thereof, the error, if any, was error without prejudice. Defendant has no cause of complaint based thereon and we need not further consider these contentions. C. L. 1921, §645; Civil Code, C. L. 1921, p. 111, §50.

It should be observed that while Mr. Sherman, who appears here for defendant, was entered as one of his attorneys in the trial court, the record does not disclose that he actively participated; and that Messrs. Alter & Upton first appear in this court.

Finding no reversible error in this record the judgment is affirmed.

MR. JUSTICE BUTLER, sitting for MR. CHIEF JUSTICE ADAMS, and MR. JUSTICE HILLIARD concur.