No. 15,648.

Yeager *v.* The People.
(181 P. [2d] 442)

Decided May 19, 1947.

380

Mr. Fancher Sarchet, Mr. David G. Atkinson, for plaintiff in error.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, Mr. James S. Henderson, Assistant, for the people.

Mr. Vergyl H. Reynolds, Mr. Harold P. Martin, for relatrix.

*In Department.*

Mr. Justice Hilliard delivered the opinion of the court.

This is a proceeding based on chapter 20, '35 C.S.A., pertaining to "bastardy," as the chapter is entitled. Although the statute was enacted in 1879, counsel agree, and our research indicates, that prior to this inquiry, procedural or other construction of the act at our hands has not been sought. Other and later enactments have had our consideration. *Wamsley v. People,* 64 Colo. 521, 173 Pac. 425; *Poor v. People,* 67 Colo. 60, 185 Pac. 467; *Dikeou v. People,* 95 Colo. 537, 38 P. (2d) 772, are examples. Since, the record considered, it is important that we examine the act generally, we set it forth at this point. It reads as follows:

"§ 1. When any single woman who shall be delivered of a child, which by law would be deemed and held a bastard, or being pregnant with child, which, if born alive would be a bastard, shall desire to make a complaint against the father of such child, she may make

such complaint before any justice of the peace of the county where she may be so delivered, or in case the child is unborn, then to any justice of the peace in the county where she may reside; and thereupon such justice shall issue a warrant for the person accused, to be served by the sheriff or any constable, and shall cause him to be brought before such justice forthwith, and upon his appearance the justice, or the complainant's counsel, if she shall be attended by counsel, shall proceed to question the female and such witnesses as she may produce in her behalf, in presence of the party accused, touching the charge against him, and the justice or the counsel for the accused shall examine such witnesses as may be produced in his behalf; the examination of the complainant and the accused shall be taken down in writing, and if the justice shall think the complaint well founded he shall bind the accused in a bond, with sufficient surety, in a penalty of not less than five hundred (500) dollars, to be and appear at the next term of the district court of the county to answer the complaint, and in default of such surety may commit the accused; provided, that the repeal of said acts and parts of acts, or any of them, shall not be construed to affect any right either as to remedy or otherwise, nor to abate any suit or action or proceeding existing, instituted or pending under the laws so hereby repealed.

"§ 2. It shall be the duty of the justice to return all the proceedings to the next district court, which court, if the woman should desire it, may cause an issue to be made up whether the reputed father is the real father or not, which issue shall be tried by a jury as other issues in said court, and on the trial thereof both parties shall be competent witnesses.

"§ 3. If the jury shall find for the complainant, they may assess such damages as they may think proper for the support of such child in favor of the complainant, and may direct the same to be paid annually or otherwise for any term of years not exceeding eighteen, and

the court shall render judgment accordingly, and execution shall issue. If the jury make an annual allowance, then execution may be issued annually for the sum so annually allowed by the jury, computing from the term at which judgment was rendered.

"§ 4. A fair proportion of the sum so recovered shall be appropriated to the support, maintenance and education of the bastard child, and for that purpose may be demanded and received by any guardian that may be appointed for such child, the amount being regulated by order of the chancery court.

"§ 5. If the issue should be found against the complainant and in favor of the accused, he shall be discharged and the woman shall pay the costs.

"§ 6. No proceeding under this chapter shall be instituted after the child is twelve months old."

On trial to a jury there was a verdict against plaintiff in error to the effect that he was the father of the child, and that he should pay seventy-five dollars per month "for a term of eighteen years, payable monthly, support money for said child, * * * together with costs." Judgment was entered thereon "for plaintiff and against dedendant."

■ The persons here involved are plaintiff in error, charged with being the father, and one Ruby Kisner, the mother of a child born out of wedlock. The mother of the child and its reputed father are, and at all times important for consideration, were, of full and mature age. Neither force nor seduction appears. On the contrary, it clearly appears that the actors involved were responsible adults freely indulging in conduct without the pale of social sanction. Neither of them, as also clearly appears, was more to blame than the other, and whatever odium may be said to attend, attaches equally. According to the woman's story the meretricious relationship began in October, 1942, while the man's version was that the first act occurred in March, 1943. They agree that from whatever date of the beginning of the proscribed con-

duct, thereafter it occurred weekly or oftener, until shortly before the birth of the child. She testified she did not "show the pregnancy." The attending physician at the birth, called as a witness by the people, testified that the child was a "fully developed baby," and, that, based upon medical knowledge and his experience, it was conceived about December 27, preceding its birth September 27, 1943. He added that, "babies sometimes will come two weeks early and sometimes two or three weeks late, so a variation of two or three weeks any way, must be taken into consideration." Considering that plaintiff in error's denial of paternity of the child was based upon his testimony that intercourse between the parties had its inception in March, 1943, and not earlier, we think he was entitled to an instruction on that theory, and none was given. Not only so, but his request therefor was refused by the court.

We are further convinced that the procedure adopted in the district court so departed from the requirements of the act, that plaintiff in error did not have a fair trial, nor could he have had. Also, as we think, the instructions generally were calculated to burden him overmuch. We are not unmindful of the fact that objection was not made to the procedure employed, nor to the instructions that were given; but, since the judgment is to be reversed for another reason, already stated, we consider it our duty to outline the procedure we think the legislature in passing the act contemplated, and briefly to refer to what we regard as weaknesses in some of the instructions given by the trial court. Preparatory to such discussion, we state the record more fully than earlier in this opinion.

It appears, that, December 31, 1943, the woman, single, proceeding pursuant to section one of the act, made complaint before a justice of the peace to the effect that plaintiff in error was the father of a child which had been born to her September 27, 1943, based whereon, the justice issued a warrant for the arrest of the alleged

father of the child; that January 22, 1944, the woman—represented by a deputy district attorney—and the accused, with counsel, appeared before the justice; that on arraignment the accused pleaded not guilty, and evidence was received as provided by that section. At the conclusion of the inquiry, the justice, reciting "that there was and is sufficient grounds for a hearing in a higher court and due to limits of jurisdiction in this court, set the case over for hearing in the district court," and required accused to enter into bond in the sum of five hundred dollars, etc., which was given and approved. The justice made return of the "proceedings to the next district court," as provided by section two of the act; that April 3, 1944, the district attorney of the appropriate district court, proceeded therein against the accused by filing a criminal information entitled, "The People of the State of Colorado, against Harold Yeager," and gave the "court to understand and be informed that" defendant "is the father of a certain child" born September 27, 1943, to "Ruby Kisner then and there being a single woman and a resident of the county of Boulder, * * * contrary to the form of the statute in such case made and provided, and against the peace and dignity of the same people of the State of Colorado." The information was verified by a deputy district attorney, and by said Ruby Kisner. In some instances in the district court, a case is entitled as in the criminal information filed in the present proceeding, already quoted, and at other times the title would be "Ruby Kisner v. Harold Yeager." In the abstract of record, as well as in the opening and reply brief of the plaintiff in error, the case is entitled Yeager v. The People, while in the brief of defendant in error the title is, "Harold Yeager, plaintiff in error v. The People of the State of Colorado, ex rel. Ruby Kisner, defendant in error," and is signed by the attorney general, his deputy and one of his assistant attorneys general, as "Attorneys for defendant in error," and by private counsel as "Attorneys for relatrix, Ruby Kis-

ner." We think the title was fixed by the criminal information, the only pleading filed in the district court. However, we do note the appearance of private counsel for the woman as printed on the brief of defendant in error here.

At the trial in the district court, although before the justice a· deputy district attorney had conducted the prosecution, private counsel, not the public prosecutor, appeared for "plaintiff." It is apparent that not until the evidence had been introduced, and immediately prior to instructing the jury, did the court say aught to indicate that the case was other than as appeared from the criminal information, that is to say, "The People of the State of Colorado v. Yeager." At that time the court said: "While you gentlemen [evidently addressing counsel] are here, and in the absence of the jury, the court should enter, an order concerning costs. This is quite an unusual procedure. It is a statutory procedure. It started out with a criminal complaint and a warrant for the arrest of the defendant, and when the defendant pleads not guilty, it then becomes a civil case, and is brought as a civil cause, and if the defendant is found guilty, there isn't any punishment in the way of fines or imprisonment or anything of that kind, the only penalty being judgment for the support of the child. The case is brought in the name of the people of the State of Colorado ex rel. the complaining witness. For the protection of the County, I think that when it becomes a civil case, that docket fees should be assessed, * * *" The court thereupon order each party—Ruby Kisner, and plaintiff in error—to pay a docket fee, and be subject to assessment of jury fees. Private counsel for the woman and counsel for plaintiff in error acquiesced in the court's suggestion and paid docket fees. We pause to emphasize that in saying "the case is brought in the name of the people * * * ex rel. the complaining witness," the court proceeded in error. The district attorney filed a criminal information, as already we have seen, in which plaintiff

in error was made defendant, and no other pleading was filed. We are convinced, however, that the trial court, although the announcement came too late for procedural effectiveness in that court or here, rightly resolved that in the district court, if the woman desires to proceed there, the matter "becomes a civil case." Indeed, the Attorney General, appearing for the people here, and private counsel for the woman, say the case is a civil one, and support their conclusion with exhaustive citation. Counsel for plaintiff in error do not contend otherwise.

On that theory, we think the procedure followed in the district court was so impregnated with damaging implications that throughout the trial plaintiff in error was handicapped to his material prejudice. Only the first section of the statute involved provides for a "warrant," and that serves only to procure the presence of the "man" before a justice of the peace for a preliminary inquiry, and, if the justice concludes the complaint before him is well-founded, to make certain that the accused will appear at the next term of the district court to answer any civil complaint of the mother of the child, if one is filed. Thereafter, the woman, if she so elects, and none other is or may be concerned, not even the district attorney, may proceed in the district court under section two of the act, and "cause an issue to be made up whether the reputed father is the real father or not." How, therefore, assuming the woman does elect to that end, shall the "issue be made up?" The answer, as we think, is that in the district court the proceeding is controlled by section two of the act, and by rule three of our Rules of Civil Procedure. Otherwise stated, if the claim is to be progressed, the matter constitutes a potential "civil action," which, as the procedural rule provides, shall be "commenced by filing a complaint," civil, not criminal, and by the woman, not by the district attorney. The "issue shall be tried by a jury as other issues in said court." Section two of the act.

■ By instruction No. 1, as in its remarks to counsel at the conclusion of the testimony, the court erroneously stated that the proceeding is by the people on relation of Ruby Kisner. For, as already we have seen, there was no such proceeding. In instruction No. 2, the court told the jury that, "This is a civil and not a criminal proceeding." Not an accurate statement. What the court evidently had recognized, and should have said, as we think, was, that the pending case is a criminal one and not maintainable under the statute which is invoked, which contemplates a civil action. Predicated so, the court should have relegated the parties to an order of mistrial, but without prejudice to the woman, at her election, to file an appropriate civil complaint, as contemplated by the statute and required by the procedural rule, both already cited.

■ By instruction No. 1, the court also told the jury that if they found the man is the father of the child then "you shall assess such damages as you think proper for the support of the child * * *." The portion quoted is from section three of the act, and is reemphasized in instruction four. Notwithstanding the language of the statute, we think that in assessing damages the jury must proceed in the light of evidence adduced in relation thereto. This case illustrates the need for such evidence. There was none from any source in support of the sum found by the jury, nor in any sum approaching it. The man, jointly with two brothers and one brother-in-law, conduct considerable farming operations, but there was no evidence as to what the profits, if any, were in any one year; with what degree of constancy such profits were realized over any period of years; or what proportion thereof enured to the benefit of the man sought to be charged. In short, the jury, proceeding without guidance as to how they should admeasure the damages, recognized no reasonable bounds.

■ The statement of the court in instruction three that, "Even though the act of the father is regarded as

an offense against the peace and good order of society," was without warrant. The statute contemplates a civil action, and it was prejudicially unfair to plaintiff in error to include such a statement in an instruction, particularly in a case where the jury was told to assess damages as they "thought proper."

█ If, in accordance with the provisions of section two of the act, an issue in the matter here shall "be made up" after the manner of our suggestion, and resolution shall be adverse to the reputed father of the child, any money judgment given therein shall be subject to the provisions of section four of the act. In furtherance thereof, the court, proceeding as in chancery, may appoint a guardian in the premises, and thus be able at all times to exercise judicial control in the interest of the child and the public. Nothing so far appearing should be regarded as eliminating the mother of the child from favorable consideration for such appointment.

For failure of the court to instruct on plaintiff in error's theory of the case, as we have stated, let the judgment be reversed. If within sixty days from the date of our remittitur, the woman shall file a civil complaint in consonance with the rules of civil procedure, in which she shall seek to establish and recover against the man relief within the contemplation of the statute involved, her counsel shall serve a copy thereof on counsel for the man, in whose behalf they shall make answer in accordance with our pertinent rules. For convenience of all concerned, such filings may be in the case already docketed in the district court. If there shall be no civil complaint filed within the time herein fixed, or such further reasonable time as the trial court, on showing, may grant, the entire matter shall stand abated.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE ALTER concur.