No. 18,127.

NICHOLAS ANGELOPOULOS *v.* VELMA MAY WISE,
MINOR, ETC.

(336 P. [2d] 739)

Decided March 9, 1959.   Rehearing denied March 30, 1959.

Mr. BEN KLEIN, for plaintiff in error.

Messrs. GELT & GROSSMAN, Mr. MARVIN DANSKY, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is the second appearance of this action in this court. In a former proceeding a judgment against plaintiff in error was reversed and a new trial ordered in consequence of remarks of the trial court to the jury amounting to comments on the evidence. *Angelopoulos v. Wise* (1956), 133 Colo. 133, 293 P. (2d) 294. A second trial resulted in a like verdict and judgment, and the plaintiff in error, respondent below, is here on writ of error seeking reversal. We refer to the parties as they appeared in the trial court or by name.

In a petition filed in the juvenile court of the City and County of Denver on July 9, 1954, respondent was charged with fathering the unborn child of Velma May Wise, and with failing to provide support, medical attention and hospital care for the mother. On the second trial, as on the first, the issues were submitted to a jury which returned a verdict finding respondent to be the father of petitioner's child and guilty of contributing to

its dependency. Judgment was entered in accordance with the verdict.

Respondent assigns numerous errors as grounds for reversal, which may be grouped under three main points: 1. Sufficiency of the evidence. 2. Admission of objectionable evidence. 3. Giving and refusal of Instructions.

1. Velma May Wise, the mother of the child, testified to a single act of intercourse with the respondent on or about March 26, 1954, resulting in pregnancy and the birth of the child on December 27, 1954. She testified that she had known the respondent since the latter part of January 1954, and thereafter saw him frequently; that she was attending business school and it was respondent's custom to call her on the telephone nearly every day and on his free days to meet her after school. On these occasions they would visit the parks, attend picture shows and otherwise properly amuse themselves. On the day in question, a dreary misty day in March 1954, it being a Friday and respondent's day off, the parties met as she left school and drove about in his automobile. They went to a bank where he deposited his pay check, drove around some more and ultimately arrived at Cheesman Park in Denver; that it was then about dusk and they parked near the pavilion. There being no other persons about they became amorous, finally abandoned all restraint, culminating in an act of sexual intercourse. Afterward the respondent's car refused to start, its battery being dead, and after unsuccessful efforts to start it, the parties walked to a drugstore at 9th Avenue and Downing Street, where Velma May called her brother who agreed to pick her up. After waiting some time for the brother to appear, respondent returned to his car, first requesting Velma May to call him as soon as she returned home so that he would know she had arrived safely. When her brother arrived he and Velma May drove to the place where respondent's car had been parked, intending to assist him in getting it started, but

he was not there, having obtained the help of others and departed. She later telephoned him of her safe arrival as agreed. On the next day, a Saturday, they attended a picture show together and on Sunday following drove to the mountains. Early in April symptoms of pregnancy began to manifest themselves, and the respondent upon being informed thereof advised her to see a doctor. She said that plans of marriage were discussed, and the parties went apartment looking.

On May 17, 1954, the respondent drove Velma May to a physician's office, where she was examined and the fact of her pregnancy confirmed. The respondent, who had remained in the waiting room, was gone when Velma May came out of the doctor's office and she did not see him again until his appearance in court in response to process in this action. Velma May testified that she had not had intercourse with anyone except respondent, and with him only in the single instance related.

The respondent categorically denied having had intercourse with Velma May at the time alleged, or at any other time. He admitted knowing her and dating her on several occasions and that he called her on the telephone frequently; that he often met her after she came from classes at the business school. He denied, however, that he was with her in Cheesman Park at the time mentioned or that he ever accompanied her to a doctor or discussed marriage with her.

The foregoing does not detail all of the evidence received at the trial, but is sufficient to emphasize the conflict in the evidence which the jury was called upon to resolve.

■ Respondent complains that Velma May was permitted to testify that she had had no other acts of intercourse, either before or after the single act alleged in the petition. As elicited here this testimony was competent and admissible as tending to exclude the probability of some man other than respondent fathering her

child. There is in fact no evidence, or even a suggestion, that Velma May associated or kept company with other men. The evidence above detailed, if believed by the jury, was ample to support the verdict.

■■ 2. Complaint is made that respondent was not permitted to introduce in evidence a part of the transcript of the first trial relating to the testimony of Velma May, the examining physician and others, which it is claimed was at variance with the testimony of these witnesses given in the present trial. Excerpts from their testimony on the former trial were read to them and they were asked if they remembered giving such testimony, and not in a single instance was it denied. Thus their present testimony and its conflict, if any, with their former testimony was before the jury. Moreover, the court in its instructions advised the jury that the portions of the transcript of the former trial, which had been read to them, were true and correct accounts of such testimony. To have permitted parts of the testimony of these witnesses at the former trial to be submitted to the jury in the form of typed excerpts, as the respondent desired, would have given undue emphasis to such testimony and thus would have been improper. The chief complaint on this point centers around the testimony of the physician who examined Velma May. He testified that he examined her on May 17, 1954, and diagnosed her condition as two months pregnancy. He examined her again in July and noted a normal advance in her condition. He gave as his opinion that conception had occurred in the latter part of March or the first part of April, but was unable to pinpoint the exact day. This point is labored by respondent seeking to establish a variance in the testimony of the doctor as given at this and at the former trial. That the doctor's diagnosis of pregnancy was correct is undisputably confirmed by the birth of the child on December 27, 1954, and the clear cut issue before the jury was whether the act of intercourse alleged occurred within the permissible period

and whether the respondent was the man responsible. There was no error in refusing to permit written excerpts of the transcript of the former trial to be submitted to the jury.

■ 3. Complaint is made of the refusal of the court to give respondent's tendered Instruction No. 2 relating to the testimony of expert witnesses who give opinion evidence upon a hypothetical state of facts. There is nothing in the record to justify the giving of such instruction. The only witness who may be said to have given expert testimony was the physician who examined Velma May. He gave no opinion in response to a hypothetical question, nor was he asked to do so. He testified merely to the facts of his professional examination of Velma May and his diagnosis of her condition at the time of the examinations. There was no error in refusing to give respondent's Instruction No. 4.

■ Objection is made to a portion of Instruction No. 4 given by the court on preponderance of evidence which recited that the preponderance or weight of the evidence does not depend wholly upon the number of witnesses testifying to a particular fact, though the number of witnesses is to be regarded under some circumstances. However, we think that this instruction when considered in its entirety is not vulnerable to the objection made. Other instructions tendered by respondent and refused by the court were covered adequately by the instructions given. We perceive no error in the giving or refusal of instructions.

■ We note that no evidence was presented by either party touching upon the question of dependency other than that which follows from the fact of parentage, and no orders were entered by the court thereon, although the jury was submitted forms and returned its verdict finding respondent to be the father of the child and guilty of contributing to its dependency. Here, as in *Dikeou v. People* (1934), 95 Colo. 537, 38 P. (2d) 772, almost the sole question considered by either side was

the question of parentage, and where no point is made of the question of dependency, proof thereof is a mere formal matter. While under the evidence the form of verdict submitted to the jury should have been restricted to the single issue of paternity, we think no prejudice resulted to the respondent therefrom, he having made no objection to the submission of the issue of dependency to the jury, but on the contrary himself submitted forms of verdict on that issue. The primary issue, which both parties stressed and upon which all else depended, was that of paternity and under the circumstances appearing in this record we think the finding of dependency may be disregarded.

The case was fully and vigorously tried, the jury properly instructed and its verdict on the issue of paternity amply supported by the evidence. The judgment is therefore affirmed and the cause remanded for further proceedings concerning the support in dependency of the minor child.