No. 20,129.

EUGENE MARTINEZ *v.* PHILLIS JOAN LOPEZ, PETITIONER IN
THE MATTER OF THE PEOPLE IN THE INTEREST OF PAUL
JOSEPH LOPEZ, A MINOR CHILD, AND PAUL JOSEPH LOPEZ.
(386 P. [2d] 595)

Decided November 12, 1963.

Messrs. DONALDSON, HOFFMAN & GOLDSTEIN, for plaintiff in error.

Mr. LEVI MARTINEZ, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

WE will refer to the parties by name.

The proceedings in the Pueblo county court were instituted by Phillis Lopez, the unwed mother of an infant boy, charging plaintiff in error, Martinez, under '53 C.R.S. 22-7-1, with contributing to the dependency of the child and listing him in the petition as the father of the child.

Martinez denied paternity and also denied that the child was dependent as contemplated under the statute, and sought and obtained a jury trial. The jury returned answers to interrogatories submitted by the court as follows:

"*INTERROGATORY NO. 1* Do you find that Eugene Martinez is the father of the child, Paul Joseph Lopez?

"Answer, Yes or No.   Yes.

"*INTERROGATORY NO. 2* Do you find that Eugene Martinez has contributed to the dependency of the child, Paul Joseph Lopez?

"Answer, Yes or No.   Yes."

The judgment entered by the court is as follows:

"WHEREUPON, IT IS ORDERED BY THE COURT that the verdict be received and filed and that judgment be entered thereon; that the respondent, Eugene Martinez, is the father of the child, Paul Joseph Lopez.

"IT IS ALSO ORDERED that the respondent be given 30 days within which to file a motion for a new trial, and that no order for support be made in the meantime."

It is to be noted that no judgment was entered by the court on the verdict that Martinez was contributing to the dependency of the minor child, Paul Joseph Lopez. Phillis did not assert cross error to the failure of the court to enter such a judgment. That this is not an oversight may be deduced from the fact that the sole issue which she sought to litigate in the trial court was the paternity of Martinez. As was noted by the court in its order denying the motion for new trial, "The petition does not in so many words state that the child is a dependent child although the title is 'Petition Contributory [sic] to Dependency.' " Also that the court intended only to enter a judgment concerning the paternity of the child may be gleaned from other remarks by the court, to-wit:

"* * * It would be a queer state of affairs if the parentage of this child by the father, which has been determined by a jury, should have to be set aside merely because it has not been shown that the child *has yet been in need of support by its father.* * * * Why should this Court set aside a finding that Eugene Martinez is the father of the child, Paul Joseph Lopez, and have to litigate that matter next year or at any time in the future when it might be shown that the child's mother is no longer able to furnish support for the child?"

The court by its orders recognized that a judgment of "contributing to the dependency of the child" was not proper in this case and attempted to retain jurisdiction so as to prevent the re-litigation of the issue of paternity should conditions so change as to warrant similar proceedings in the future.

Therefore, the sole question to be determined is: *IN A PROCEEDING UNDER C.R.S. '53, 22-7-1, CHARGING ONE WITH CONTRIBUTING TO THE DEPENDENCY OF A CHILD, AND WHEREIN THERE IS NO EVIDENCE THAT THE CHILD IS EITHER NEGLECTED OR DEPENDENT UPON CHARITY OR DEPENDENT UPON THE FATHER FOR SUPPORT, MAY THE COURT NEVERTHELESS ENTER JUDGMENT OF PATERNITY AGAINST A RESPONDENT IN SUCH A PROCEEDING?*

This question is answered in the negative.

■ This court said in *Everett v. Barry,* 127 Colo. 34, 252 P. (2d) 826:

"Even if the wording of our statutes be too complicated for simple understanding, certain rules of law regarding our juvenile courts and rights of custody have been so often declared by us that even the wayfaring man need not err therein. These rules are as follows:

"1. That the juvenile court is a statutory court *with no jurisdiction beyond that expressly given by statute;* * * *

"3. That such jurisdiction attaches only in proceedings brought, *not in behalf of any person,* but solely where children are found delinquent or have been so circumstanced, neglected or imposed upon as to require the state to take over their custody or *act otherwise for their protection;* * * * " (Emphasis supplied.)

■ Under the statutes the proceedings in "paternity" matters are provided for in C.R.S. '53, 22-6-1. The petitioner Lopez could not bring suit under that statute for the reason that C.R.S. '53, 22-6-6, provides a limitation as follows: "Limitation of proceedings. No proceedings under this article shall be instituted after the child is twelve months old."

At the time of the institution of this action the child was approaching its fourth birthday. Being barred by the limitations imposed by the statute relating to paternity proceedings, Phillis nevertheless attempted to estab-

lish the paternity only of Martinez through use of proceedings provided in 22-7-1, et seq. The proceedings were for the mother and not for the child. A paternity proceedings under the article is a civil action and can be filed by the mother and none other, not even the district attorney. *Yeager v. People,* 116 Colo. 379, 181 P. (2d) 442.

Although the petition was entitled "In the matter of the People in the interest of Paul Joseph Lopez, a minor child and concerning Eugene Martinez," in the trial that ensued the People did not participate through counsel or otherwise. This is also true of the writt of error in this court. Sometime between the filing of the petition and the docketing of the writ of error here the action became captioned in this court: "Phillis Joan Lopez, Petitioner in the Matter of the People in the Interest of Paul Joseph Lopez, a minor child, and Paul Joseph Lopez." She appeared throughout by private counsel. At the trial before the jury the only testimony by Phillis involved her relationship with Martinez and was exclusively on the question of paternity. Not one word of evidence was offered to establish the condition of dependency of the child; his whereabouts; that he was neglected or so circumstanced or in any manner so conditioned as to call upon the *police powers* of the state in his behalf as provided in C.R.S. '53, 22-7-7. Therein the legislative purpose in enacting the article on "contributing to dependency or delinquency" is declared as follows:

"This article shall be liberally construed in favor of the state under its police powers and all the chancery powers and jurisdiction of the court in caring for the child as a ward of the state, and for the purpose of the protection of the child from neglect or omission of parental duty toward the child by its parents, custodian, or guardian, and further to protect the child from the effects of the improper conduct or acts of any person whomsoever, which may cause, encourage or contribute to the delinquency, dependency or neglect of the child,

altho such person may be in no way related to the child."

Although Phillis did not present any evidence that even remotely touched upon the issues framed by her petition and Martinez's answer, the following facts were established on cross-examination of Phillis and stand uncontradicted in the record: The mother at the time the child was born was a mature woman of twenty-eight years of age. For more than three years and at the time of the trial she had demonstrated that she was perfectly capable of and had in fact been taking care of herself and the child. She had a good position, was drawing a better than average salary; she owned an automobile which was paid for and had only one outstanding unpaid bill in the amount of $40.00 — the balance on a charge account at a local department store on purchases for her own wardrobe. She said that she was living at home with her parents, that she was paying her mother a sum agreed upon for the care of the baby. If any funds were forthcoming from the father, they would only provide a surplus for the mother. The child was not in need of anything beyond what was then being provided. For what these additional surplus funds would be spent was not revealed by the record, save that Phillis said on one occasion in her testimony that *she* desired *extra money* to continue her education. She was asked:

"Q. Also on page 5 of your deposition you were asked this question: 'Q. You are not having difficulties supporting yourself and Paul are you? Your answer was "No." That is still correct? A. Yes.' "

■ An analysis of the provisions of C.R.S. '53, 22-7-1, et seq., shows clearly that the object of the statute is to provide for proceedings against persons (not necessarily fathers) "who shall encourage, cause or contribute to the *dependency* or delinquency of a child or shall *do any act to directly produce, promote or contribute to the conditions* which render such a child a *dependent, neglected* or delinquent child." (Emphasis supplied.)

The limit of the inquiry then is purely statutory and limited by the terms thereof. In the course of that inquiry the court can determine the relationship of the person so charged, but this is only an incident to and not proper as a primary issue under such statute. See *Dikeou v. People,* 95 Colo. 537, 38 P. (2d) 772. Therein the court said:

"Juvenile courts, in proceedings such as this, are authorized to determine the question of dependency, and, *if found,* to determine who is responsible therefor, or who has contributed thereto, and to enforce their findings by judgment * * *. It is immaterial that the statutes do not specifically confer authority to determine the question of parentage. *The law is to be enforced where the duty exists. * * *"* (Emphasis supplied.)

The trial court should have directed a verdict in this case by ruling that there was no evidence that the respondent was contributing to the dependency or neglect of the child. In so terminating the proceedings there would then be no jurisdiction in the court to submit the question of paternity to the jury. To permit one to expand the statutory proceedings on "contributing to dependency" beyond the construction guidelines in 22-7-7 would effect judicial repeal of the provisions on "paternity proceedings" and would forever remove the limitations therein contained. We recognize that in any proceedings where the state is involved for the interest and protection of the minor there can be no statute of limitations imposed which would prevent inquiry into the responsibility and relationship of a person causing the conditions. The state cannot be so hamstrung. But as was noted in the Yeager case, the People are not interested in and cannot be made a party to a paternity proceeding, which is one strictly between the mother and the alleged father.

It is the contention of Phillis, though not seriously urged and for which no authority is cited, that the mere fact that an infant is involved conclusively establishes

its dependency. Of course it is true that every minor is dependent on others. But if we were to so construe the statute that contribution to dependency would be conclusively presumed from the mere fact of infancy of the child, then we would deprive the person so charged of the right to a jury trial as provided in C.R.S. '53, 22-7-4, on the issue of dependency. We pose the question: Why provide for a jury unless a person charged with contributing to dependency may show, as was done in this case, that the child is not in such condition or so circumstanced as to warrant a finding against him?

The judgment is reversed and the cause remanded with directions to dismiss the proceedings.

MR. JUSTICE McWILLIAMS concurs in the result.

MR. JUSTICE MOORE did not participate.