No. 14,208.

LANGWORTHY *v.* REPUBLIC MUTUAL INSURANCE CO. ET AL.

(86 P. [2d] 610)

Decided January 9, 1939.

394

Mr. Joel E. Stone, Mr. Charles E. Coughlin, for plaintiff in error.

Mr. Carle Whitehead, Mr. Albert L. Vogl, Mr. Frank A. Wachob, Mr. Robert L. McDougal, Messrs. Hindry, Friedman & Brewster, for defendants in error.

*En Banc.*

Mr. Justice Young delivered the opinion of the court.

The transaction giving rise to this litigation involves the giving of a deed the execution and delivery of which, according to the allegations of plaintiff, were procured by means of false representations.

The parties are here in the same relative position as they appeared in the district court and will be designated as plaintiff and defendants or by name. Defendants' demurrers to plaintiff's second amended complaint were sustained, the cause dismissed, and judgment for costs entered against plaintiff, who is here seeking a reversal of the judgment.

The second amended complaint sets forth that the Republic Mutual Insurance Company is a Colorado corporation duly organized and existing; that defendant John Chambers is the duly appointed receiver of the company; that defendants, F. A. Heath, E. W. Larson, H. H. Marshall, H. R. Seeley, Albert W. Metcalf and Joseph Ritchey

"were officers, directors, agents and employees of the defendant company and were in control of said company." It is further alleged that plaintiff was the owner in fee and in possession of a certain 320 acres of land therein described, of the reasonable value of $3,000.

The action is in fraud and deceit and the false representations alleged to have been made by defendants, Heath, Larson, Marshall and Seeley respecting the defendant insurance company were: (a) That it was a successful insurance company; (b) that it was in sound financial condition; (c) that it was well managed; (d) that its assets and income had never been used or diverted to any unauthorized and dishonest uses; (e) that its officers, directors, agents and employees were persons of honesty and integrity; (f) that the corporation was the contemplated grantee and purchaser of plaintiff's property; (g) that the corporation's assets were unimpaired. It is alleged that such representations were false; that their falsity was unknown to plaintiff, and that she believed them and acted upon them to her damage. Plaintiff further says that by reason of the premises she was induced to enter into a certain agreement with the defendant company and the defendants Heath, Larson, Marshall and Seeley, the terms of which are substantially as follows: "That the plaintiff would convey the above described lands and premises to the company; that the defendant company and the defendants F. A. Heath, E. W. Larson, H. H. Marshall and H. R. Seeley would pay to the plaintiff, in consideration for the plaintiff's conveying as aforesaid, the sum of Twenty-Seven Hundred Dollars ($2,-700.00); that the Two Hundred Dollars ($200.00) of the aforesaid sum would be paid to the plaintiff at the time plaintiff should convey as aforesaid, and the balance of Twenty-Five Hundred Dollars ($2,500.00) would be paid to the plaintiff within about two and one-half years after the plaintiff should convey as aforesaid, and that the defendant company and the defendants F. A. Heath, E. W.

Larson, H. H. Marshall and H. R. Seeley would secure the said balance by securities of the said company; that the said balance would bear interest at the rate of 6% per annum on the unpaid balance until paid.'' Pursuant to this agreement it is alleged, that plaintiff executed the deed in question to defendant Ritchey, who also was a director of the company. It is further alleged in the complaint: ''That on or about October 16, A. D. 1934, plaintiff received by mail a paper described as a 'Guarantee Fund Certificate,' numbered 131 and dated October 8, 1934, issued by the defendant company to Mrs. Evelyn Langworthy, who is the plaintiff herein.

''That on or about December 14, A. D. 1934, at the office of the defendant Company in the United States National Bank Building in Denver, one Schectel, his first name being unknown to plaintiff, gave to the plaintiff a check for Fifty Dollars ($50.00), made by the Company; that plaintiff cashed the check and received the money therefor.

''That plaintiff offers and hereby tenders into the Registry of this court the aforementioned 'Guarantee Fund Certificate,' together with the sum of Fifty Dollars ($50.00), to be disposed of as the court may direct.

''That the defendants have wholly failed to perform except as hereinabove alleged; that said 'Guarantee Fund Certificate' is worthless and of no value.''

The complaint then sets forth that as a part of the scheme to defraud plaintiff there was an agreement between the defendant Ritchey and the defendant company and the defendants Heath, Larson, Marshall and Seeley, that Ritchey would permit the company and these defendants to receive titles of lands in his, Ritchey's name and that he would then execute purported promissory notes secured by purported mortgages on the lands that were put in his name without any consideration other than ten per cent of the face amount of the purported notes which would be paid to him by the said defendant company and

the other four defendants for signing such notes which were then to be used as assets of the company; that it was agreed that defendant Ritchey would not be bound by the notes and that he would convey the equity in the lands to whomsoever the defendant company and the defendants Heath, Larson, Marshall and Seeley might direct. It is further alleged that pursuant to this agreement Ritchey executed a note dated October 11, 1934, due five years after date, in the sum of $1,250, secured by mortgage on the land that plaintiff conveyed to him which mortgage was duly recorded October 26, 1934, in the office of the clerk and recorder of Elbert county, Colorado. It is further stated that defendant Metcalf, who it is alleged was aware of, and familiar with, the fraudulent operations and methods of the company from his association with it and with the defendants Heath and Larson prior to October 8, 1934, and who, it is further alleged, had entered into a contract with the company on or about October 5, 1934, to act as its medical director for life at a salary of $250 per month, on or about February 21, 1935, procured a judgment by default against the company on which he sued out an execution and levied on the $1,250 note before mentioned as an asset of the company; that the levy on the note was made on or about May 23, 1935; that the execution sale was had on or about June 7, 1935; and that a certificate of purchase was issued to Metcalf on or about June 12, 1935. Plaintiff also avers that prior to June 7, 1935, the date of the execution sale, and on or about April 15, 1935, she personally notified and related to Metcalf all the facts and circumstances surrounding the procurement of the said deed from her as aforesaid and advised him that it had been procured fraudulently; that the purported note and mortgage signed by Ritchey were wholly without consideration; and that the mortgage had been filed so that the note and mortgage would appear as assets of the company. Plaintiff further states in her complaint that shortly after October

398

8, 1934, she demanded from the company and the defendants Heath, Larson, Marshall and Seeley a reconveyance of the land to her, and that during the period from December, 1934, to March, 1935, at the office of the company in Denver, she made about seven demands for such reconveyance; that on or about January 6, 1936, she demanded a reconveyance from defendant Ritchey. Plaintiff further alleges upon information and belief that an agreement has been entered into between Metcalf and defendant Chambers, the receiver of the company, that the said Chambers shall receive one-third of all the proceeds of the assets of the company which are now in the control of the said Metcalf for the personal use of Chambers. The prayer of the complaint is that the deed and mortgage involved be cancelled; that Ritchey be adjudged to reconvey the lands and premises to the plaintiff; for such other relief as may be equitable, and for costs.

Defendants Ritchey and Metcalf separately demurred to the second amended complaint on the ground that it did not state facts sufficient to constitute a cause of action. The defendant company, and Chambers, as receiver thereof, demurred on the same ground and upon the further ground that there is a defect or misjoinder of parties in that it appears affirmatively that neither the company nor the receiver has any interest in the outcome of the controversy. These demurrers were sustained, and the court on its own motion dismissed the complaint. Upon motion of defendants judgment for costs was entered against plaintiff.

The first proposition with which we are confronted is the question of whether a fraud was committed upon plaintiff by defendants Heath and Larson, Marshall and Seeley. In the determination of this question it must be borne in mind that there was a disposition of the case on demurrer, and that the well-pleaded facts in the complaint must be taken as true. If the representations are such as may be the basis of an action in fraud the other

allegations we think are sufficient. In fact their sufficiency is not questioned except that it is asserted that the nonvalue of the guarantee fund certificate was not alleged to have existed at the time of its delivery. To this point we shall advert later in the opinion. For the purposes of the demurrer, as before stated, it is admitted that these four defendants, knowing that their statements were false, represented to plaintiff that the company was a successful insurance company; that it was in a sound financial condition; that it was well managed; that its assets and income had never been used nor diverted to unauthorized and dishonest uses; that its officers, directors, agents and employees were persons of honesty and integrity; that the corporation was the contemplated grantee and purchaser of plaintiff's property, and that the corporation's assets were unimpaired. In the light of the fact that plaintiff was to receive a large part of the purchase price in securities of the company, which we may assume was the guarantee fund certificate, the financial condition of the company was very material and so likewise was the character of those charged with its management. If one in his complaint sets forth material false representations it might be proper, on motion, to require him to state how and in what manner the representations were false, but unless application is made in apt time that the complaint be made specific in such particulars defendants are not entitled to the information and cannot raise the issue by demurrer. We think it cannot be assumed that if the plaintiff had been advised as a matter of fact that the company was *not* a successful insurance company; that it was *not* in a sound financial condition; that it was *not* well managed; that its assets and income *had been diverted* to unauthorized and dishonest uses; that its officers, directors, agents and employees were *not* persons of honesty and integrity; that the grantee was to be *Ritchey* and *not the company* and that the assets of the company were *not* unimpaired, that she would have ac-

cepted a promise of the company to pay $2,500 or a "guarantee fund certificate" based on the promise or upon assets of a company of that character. To sustain the judgment we must indulge such an assumption.

We are not fully advised as to the nature of the "guarantee fund certificate." Whether it was the company's promise to pay or purported to be secured by certain assets of the company is not disclosed by the record. The complaint alleges, and the allegation is admitted by the demurrers, that long before it was due it was worthless. Whether its worthlessness resulted from the failure of the company or from the character of the assets, if any, on which it was based, we do not consider to be material. If it is now worthless there is a strong probability it would not have become so if the representations had been true instead of false, and in any event plaintiff was entitled to be advised truthfully, if advised at all, before she accepted it.

It appears that Ritchey was to assume no liability to the company by reason of signing the note and mortgage and that he was to dispose of the equity in the land to whomsoever the defendants Heath, Larson, Marshall and Seeley and the company might direct. He received $125 for his "services" to the company and the four who procured the land for the company. If cancellation of the note is required to work equity the note and all parties interested are within the jurisdiction of the court. If the company is required to be made whole in order to work equity the plaintiff is under the jurisdiction of the court and may be required to do equity whether she has or has not offered to do all the equity that the court deems requisite to restore the status quo.

Since the court has jurisdiction of the parties, the land and the note—all that is requisite to compel the plaintiff, Ritchey and the company to do equity as between them—it is necessary to consider only the rights of defendant Metcalf. Admittedly he was a director of the company after October 5, 1934, and the alleged fraudulent

representations of Heath, Larson, Marshall and Seeley were not made until three days later. Moreover, before Metcalf sought to enforce the judgment procured by him on default by levy on and sale of the note he was personally advised by plaintiff of the fraud alleged to have been perpetrated on her. As before mentioned, plaintiff, between December, 1934, and March, 1935, at the office of the company, made about seven demands for a reconveyance of the land, during all of which time Metcalf was a director of the corporation. In the light of these facts and the further admitted fact that Metcalf, prior to the execution sale was "aware of and familiar with the fraudulent operations and methods of the company" from his "association with the company and with Heath and Larson prior to October 8, 1934," we think plaintiff had the right to be heard on her proof, which, if it sustained the allegations of her complaint, admitted by the demurrers, would entitle her to relief against Metcalf, as well as against the other defendants.

█ There is no misjoinder of parties. It appears that judgment by default was entered against Heath, Larson, Marshall and Seeley. As against them their fraud stands adjudicated. The receiver simply stands in the shoes of the company which was a party to the payment of $125 to Ritchey for executing the note. Ritchey holds the equity in the land, and Metcalf holds the note and mortgage under levy and execution sale based on a judgment against the company. The plaintiff is seeking merely to follow the fruits of the fraud and this she may do and recover unless and until they come into the hands of one who has taken them for value without notice of the fraud.

The judgment is reversed and the cause remanded with directions to overrule the demurrers, and for further proceedings, not inconsistent with the views herein expressed.

Mr. Justice Bakke, Mr. Justice Knous, and Mr. Justice Holland dissent.