No. 18,616.

EULALIA BRIANO, IN BEHALF OF MARIA THERESA RUBIO, MINOR *v*. EMILIANO M. RUBIO.
(347 P. [2d] 497)

Decided December 14, 1959.   Rehearing denied December 28, 1959.

Mr. MANDELL LEVY, for plaintiff in error.

Mr. CHARLES S. VIGIL, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

WE are here asked to reverse an order dismissing a petition in contributory dependency, filed under the provisions of C.R.S. '53, 22-7-1 and 22-7-9. The order granting respondent's motion to dismiss, entered after the trial to the court, was based upon the finding of the court that the evidence adduced at the hearing was insufficient to support the allegations in the petition that respondent was the father of Maria Theresa Rubio, born in May 1954, the minor daughter of petitioner Eulalia Briano.

As we view it there is only one issue of substance presented: viz., was the judgment of the court based upon substantial competent evidence? We answer this question in the negative.

Petitioner's evidence consisted of both documents and testimony. Petitioner herself testified that except for intercourse with respondent she had had no relations with any other man during the crucial period. This was competent evidence subject only to rebuttal. *Angelopoulos v. Wise* (1959), 139 Colo. 82, 336 P. (2d) 739. She also testified to her continual demands on respondent for support, his promise of marriage, acknowledgment of the child as his on several occasions and later denials of paternity.

Jennie Vigil, a witness for petitioner, testified that petitioner when pregnant had introduced her to respondent as the father of her expected child and that

there was no denial of paternity by respondent; that he had then expressed concern for her welfare; that later on several occasions in her presence he had said that the baby was his child; that he had taken the baby, set her on his lap, talked baby talk to her, stated how much the baby looked like him; that he was always telling Miss Briano to take care of the baby; that from her observation he always treated the baby as his own; and that he was always very proud of her.

Maria Gaitan testified that in her presence the respondent would pick up the baby and pet her like a father would. The mother of petitioner, with whom she was residing during the period in question, testified that respondent had never denied that he was the father of the child, that he had always stated to her that it seemed to him he was the father, and that he had indicated that he would do something to help support the child when he was working. She also testified that respondent ate in her cafe during 1953, during the period when the child was conceived.

The documentary evidence offered by petitioner consisted of a birth certificate and certificate of baptism both reciting respondent as the father of the child; a postmarked envelope claimed to have contained a letter sent by respondent to petitioner and two photographs, one of which allegedly had been signed by respondent but which had the writing largely eradicated, and another smaller photograph of respondent which bore on the back thereof, the following inscription (in Spanish): "With love to Maria Theresa Rubio from her father who loves her and will never forget her." s/ "E Rubio." Petitioner testified on both direct and cross examination that she had provided the information for the birth and baptism certificates without the knowledge or presence of respondent, respondent having been unavailable.

Respondent was called for cross examination by petitioner and testified as an adverse witness. His testimony was to the effect that he did not know the petitioner at

the time the pregnancy began, having met her for the first time in January or February of 1954; that he did not know she was pregnant until some time after the birth (either in 1954 or 1955, he was not certain as to the date); and that petitioner had not asked him for support of the child. He testified that he had married one Amelia Rubio on July 6, 1957. Amelia testified that in 1955 petitioner had first told her that her husband was the father of petitioner's child but that her husband had always denied it. Several conflicts appear in her factual presentation when compared with respondent's testimony as to their own relationship prior to their marriage. Respondent also introduced into evidence the testimony of a handwriting expert to the effect that the inscription on the back of the small photograph and on the envelope was not the handwriting of respondent.

With the exception of the testimony of the handwriting expert, the only other evidence offered by respondent was the testimony of three witnesses which by innuendo sought to impugne petitioner's character. This testimony consisted of nothing more than vague assertions that petitioner had in the past on a few occasions been seen in the company of other unidentified male companions. None of this evidence even hinted that petitioner's conduct had been improper or even unusual with any of these unnamed individuals. This testimony certainly can have no probative value in determination of the ultimate issue; i.e., whether respondent was in fact the father of petitioner's child, and it was wholly incompetent and irrelevant. See *Huggins v. Campbell* (1954), 130 Colo. 183, 274 P. (2d) 324.

It is thus apparent that respondent presented no competent evidence in his defense other than his general denial of the allegations of paternity, and the conflict arising on the question of whether the handwriting appearing on a photograph and the envelope was his. Though the record contains much incompetent evidence received without objection by either petitioner or re-

spondent, we must assume that the trial court disregarded all such evidence in formulating its opinion, and that its decision was based solely upon such evidence as was properly before it.

The general rule here applicable is that when a case is tried to a court, determinations as to the credibility of witnesses, the weight to be given their testimony, its probative effect and the inferences and conclusions to be drawn therefrom, are all matters within the province of the trial court, and will not be disturbed upon review unless manifestly erroneous or actuated by passion or prejudice.

The record here discloses that the discredited denial by respondent of the paternity in legal effect raised no substantial issue of fact. While respondent's evidence tends to cast doubt upon some of petitioner's documentary evidence, the proof of paternity offered by her was supported by unimpeached testimony that respondent had publicly acknowledged the child as his own; had taken a special interest in it and expressed pride in the fact that it resembled him, and treated it for a while as would a father. It thus appears to us that the judgment of the court is against the manifest weight of the relevant and competent evidence adduced at the trial.

The above rule as to sustaining the trial court when there is conflicting evidence should not, in a paternity case, be permitted as a defensive bar to allow a respondent to elude his duty and burden of going forward with evidence needed to rebut petitioner's corroborative evidence of paternity. Here respondent's failure to rebut such evidence is fatal to his cause.

The judgment is reversed and remanded for appropriate orders concerning the support of the minor child.

MR. JUSTICE HALL and MR. JUSTICE DAY concur.