## No. C-1407

### P. E. Page, a/k/a Paul Page v. Morton J. Clark and Alice R. Clark

(592 P.2d 792)

Decided March 26, 1979. Opinion modified and as modified rehearing denied April 23, 1979.

Yegge, Hall & Evans, Michael D. White, Harvey W. Curtis; Wilkes McClave III, for petitioner.

Dennis R. Frohlich, for respondents.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Paul Page was the plaintiff in an action for unlawful detainer against the defendants, Morton and Alice Clark. He brought this action to terminate their tenancy in property on which they were residing and to gain possession of the property. The real property in question had been conveyed from the Clarks to Page in 1975 by means of a warranty deed absolute on its face. The Clarks answered, alleging that Page held the property for them as a constructive trustee and demanded that he convey the property to them. The constructive trust allegedly arose because at the time of the 1975 conveyance, Page had orally agreed to reconvey the property to the Clarks.

The trial court held that Page did not hold the land as a constructive trustee for the Clarks. The conveyance from the Clarks to Page of the real property was a sale in the opinion of the trial court. Therefore, the trial court ordered Page to pay the balance of the sale price to the Clarks upon

the termination of their tenancy.

The court of appeals reversed. *Page v. Clark,* 40 Colo. App. 24, 572 P.2d 1214 (1977). We granted certiorari and now reverse the court of appeals and remand with directions for further proeedings not inconsistent with this opinion.

The court of appeals held that the trial court's finding that Page did not hold the property as constructive trustee for the Clarks did not mean that he could not be forced to reconvey the property to them. The court of appeals imposed an "equitable trust" upon the property and ordered Page to convey it to the Clarks.

I.

## Motion for New Trial

We concur in the court of appeals' determination that the Clarks' motion for new trial was timely filed.

II.

## The Facts

The Clarks were the owners of two adjoining parcels of land in Erie, Colorado. The east parcel was unimproved and unemcumbered. The Clarks resided in a house on the west parcel. The west parcel was subject to a substantial encumbrance.

Page was the owner of an. aircraft salvage business. He and Morton Clark developed a business relationship in which they would recover wrecked aircraft and store them, rent free, on the real property in issue. The Clarks also received calls relating to the business at their home and showed the aircraft to prospective customers. During the course of this relationship, the parties became friends.

In early 1975, the Clarks entered into negotiations to sell the east parcel to Page. Page wanted to purchase the east parcel to ensure that he would have a place to continue storing his salvaged aircraft. He also intended to improve that parcel, with an eye toward the future erection of a machine shop. On March 13, 1975, the Clarks conveyed the east parcel to Page by a warranty deed which did not reserve any interest in the property by the Clarks. The consideration for the sale of the east parcel was $1,000. The trial court found that, at the time of the sale, the parties orally agreed that the east parcel was to be reconveyed by Page to the Clarks "at such time as [Page] elected to sell and at such costs as he had incurred in purchasing and improving that property." The trial court also found that the reconveyance was to be made within a period of five years from the initial conveyance.

In September of 1974, the Clarks had begun to experience financial difficulties with regard to the west parcel and the house. Those difficulties continued until April 4, 1975, when they conveyed the west parcel to Page. That conveyance was also made by a warranty deed absolute on its face. The consideration was $17,000, which included Page's assumption of the

first and second deeds of trust on the property, together with his pay-off of the accrued arrears on those deeds of trust. The trial court found that the conveyance of the west parcel and the house was accompanied by a second oral agreement to reconvey, similar to that which accompanied the first conveyance. In addition, the trial court found that when the parties consummated the sale of the west parcel, they entered into an oral collateral agreement that the Clarks could continue to occupy the house on the west parcel, rent-free, for so long as Page continued to hold title. The trial court further found that the total value of the property was $23,000. It also found that the consideration which was paid in the form of cash and the assumption of the mortgages was $18,000. The trial court valued the rent-free tenancy at $5,000.

The relationship between the parties became strained when the Clarks' son was killed in a boating accident which occurred while he was with Page. The relationship deteriorated further when the house on the west parcel was destroyed by fire in June of 1975.

On July 1, 1975, Page served the Clarks with a notice to quit the property. They refused, and on July 7, 1975, Page brought this action for unlawful detainer. The Clarks answered and alleged that Page held the subject property for them as a constructive trustee, by virtue of the oral agreements to reconvey described above. In the alternative, they alleged that Page had procured the property from them by fraud.

The trial court refused to impose a constructive trust upon Page for the benefit of the Clarks.[1] It first found that the property had been purchased by Page for "good and sufficient consideration." There was admittedly a disparity of $5,000 between the $23,000 value of the land and the $18,000 purchase price. However, the trial court found that the oral agreement which allowed the Clarks to live in the house rent-free for five years constituted the remainder of the consideration for the sale.

The trial court also found that the business relationship between Page and Morton Clark was not a partnership. Instead, it characterized the transactions between them as that of employer and employee. *Cf., Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545 (1928). The trial court further found that the sale of the property in question "was consummated as an arm's length transaction *without clear and convincing evidence of the existence of fraud, fiduciary relationship, partnership agreement, or other confidential relationship."* (Emphasis supplied.)

Accordingly, the trial court held that, as there was no basis for the exercise of its equitable powers, the oral agreement to reconvey the east and west parcels to the Clarks was unenforceable because the parties to

---

[1] In the trial court, the Clarks did not contend that the facts of this case justified the imposition of a resulting trust in their favor.

that agreement had not complied with the provisions of the statute of frauds, section 38-10-106, C.R.S. 1973.[2] *See Griffith v. Sands,* 84 Colo. 456, 271 P. 191 (1928). The trial court also found that there was not "clear and convincing evidence" that Page entered into the sale agreement with the intention of not fulfilling his promise to reconvey. It thus dismissed the claim that the property had been acquired by fraud.

However, the trial court found that the oral agreement which gave the Clarks a five-year, rent-free tenancy in the property was enforceable despite the provisions of section 38-10-106, C.R.S. 1973, because of the "continuing performance of this agreement, together with [Page's] confirmation of this agreement during [his] testimony at trial." The trial court concluded that, since the relationship between the parties had deteriorated so markedly since the oral agreement relating to the tenancy was entered into, it would be unjust to require the parties to continue as landlord and tenant. In pursuit of an "equitable alternative," the trial court valued the tenancy at $5,000, and divided that figure by sixty months. It declared the resulting figure of $83.33 to be the monthly value of the tenancy, and ordered Page to pay to the Clarks the remaining $5,000 value of the purchase price for the property, subject to a reduction of $83.33 for each months delay by the Clarks in terminating their tenancy.

### III.
### *Proceedings in the Court of Appeals*

The trial court was reversed by the court of appeals. *Page v. Clark, supra.* In the course of its opinion, the court of appeals made a new finding of fact, overruled three findings of fact made by the trial court, did not follow the doctrines of resulting and constructive trust, and established a new equitable remedy, which it characterized as an "equitable trust," and imposed a new burden of proof by which courts are to determine whether to exercise their equitable powers. We reverse. These issues will be treated seriatim.

### IV.
### *Findings of Fact*

The court of appeals made a new finding of fact on an issue not reached by the trial court. The court of appeals found that the Clarks had offered, before and during the trial, to reimburse Page for his costs in purchasing and improving the property. The testimony on this question was uncontradicted, and the finding is supported by the record. We do not

---

[2] Section 38-10-106, C.R.S. 1973, provides:
*"Conveyance - trust - power must be in writing.* No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto shall be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing."

reject this new finding which is an issue on appeal. *See Westland Nursing Home, Inc. v. Benson,* 33 Colo. App. 245, 517 P.2d 862 (1974).

The three trial court findings which were rejected by the court of appeals were: (1) that the oral agreement to reconvey the parcels was to take effect at such time as Page elected to sell; (2) that the oral agreement relating to the Clarks' rent-free tenancy was part of the consideration for the purchase of the west parcel; and (3) that:

"While [Page's] agreement with respect to the reconveyance of the property *may* have influenced the [Clarks'] decision to sell in the first instance, and constituted a promise by the plaintiff concerning a future act, the evidence is insufficient to establish that the plaintiff's promise, when made, was coupled with a contemporaneous intention not to fulfill the agreement." (Emphasis supplied.)

In place of these findings, the court of appeals substituted three new findings: (1) that the oral agreement relating to reconveyance was subject to Clarks' right to repurchase; (2) that the oral agreement concerning the Clarks' rent-free tenancy was not consideration for the purchase of the west parcel, but instead was evidence of "the parties' intention that [the Clarks] retain their beneficial interest in the property"; and (3) that the defendants *were* influenced to sell by the oral agreement to reconvey.

We have consistently disapproved of the substitution of new factual findings by reviewing courts for those made by the trial court. *See Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970). The findings of the trier of fact must be accepted on review, unless they are so clearly erroneous as not to find support in the record. *Briano v. Rubio,* 141 Colo. 264, 347 P.2d 497 (1959). The sanctity of trial court findings is derived from the recognition that the trial judge's presence during the presentation of testimonial evidence provides an unparalleled opportunity to determine the credibility of the witnesses and the weight to be afforded the evidence which is before the court. *See Baumgartner v. Tweedy,* 143 Colo. 556, 354 P.2d 586 (1960). The testimony of the parties was contradictory on almost every material point in controversy. It is impossible to determine from the bare pages of the record whose testimony should be given credit relating to the facts. In such cases, the difficult task of finding those facts is best left to the trial court.

Accordingly, we reject the court of appeals' finding as to the time when the reconveyance to the Clarks was to take place. The trial court's finding that the reconveyance was to take place when Page decided to sell is not without support in the record.

To the extent that the court of appeals found that the oral agreement relating to the Clarks' rent-free tenancy was not part of the consideration which Page paid for the west parcel, that finding is also improper. There is an absence of direct testimony on this point. However, it was reasonable for the trial court to infer, from the facts before it, that such was the

intention of the parties.

The third disputed finding of the trial court, concerning whether the Clarks were influenced to sell by Page's agreement to reconvey, is ambiguous. The finding was made during the course of the trial court's ruling that Page had not defrauded the Clarks, and its statement that Page's agreement *"may* have influenced the defendant's decision to sell" is phrased in terms of a suggestion. However, the view which we take of this case makes it unnecessary for us to resolve this issue.

## V.
### *The "Equitable Trust"*

■ Even though the court of appeals altered the trial court's factual findings, it did not directly address the trial court's ruling that the facts of this case were not sufficient to demonstrate the need for the imposition of a constructive trust. A finding that Page held the property subject to a constructive trust for the Clarks would, of course, have meant that Page's oral agreement to reconvey the property to the Clarks would have been enforceable, despite the provisions of the statute of frauds. *See* section 38-10-107, C.R.S. 1973; *Von Trotha v. Bamberger,* 15 Colo. 1, 24 P. 883 (1890); *Restatement of Trusts,* 2d § 44 and comment (a) thereto.

Instead, the court of appeals held that Page's promise to reconvey was enforceable because he held the property subject to an "equitable trust" for the Clarks. The court of appeals was moved to create this novel remedy, because in its opinion the distinction between the equitable remedies of resulting trusts and constructive trusts has become so obscured that those doctrines are no longer sufficient to secure the just results for which they were designed.

The court of appeals reviewed the treatment given these equitable remedies in the Colorado courts and declared that:

"In brief, the 'conscience of equity' has become clouded by labels that are difficult to pin down and discuss in a cogent manner.

"We have therefore determined to deal with this case and others like it based upon whether the equitable responsibilities of the court require that a trust be decreed, irrespective of how that trust is denominated. The underlying theories, of course, remain unchanged. It is hoped that the emphasis which has heretofore been placed on labels, instead of on a relationship between the parties, will diminish, along with the very real possibility that appropriate relief may be denied because the proof in a given case does not precisely fit one theory to the exclusion of another." *Page v. Clark, supra* at 1214.

■ The law relating to resulting and constructive trust has been reviewed on numerous occasions by this court:

"There are three situations in which the trust which arises is properly called a resulting trust: (1) where an express trust fails in whole or in part; (2) where an express trust is fully performed without exhausting the trust

estate; (3) where property is purchased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person. In each of these cases there is an inference that the person taking title to the property is not intended to have the beneficial interest, and in each of these cases the inference arises from the character of the transaction." 5 *Scott on Trusts* § 404.1, 3rd Ed. 1967; *cf. Botkin v. Pyle,* 91 Colo. 221, 14 P.2d 187 (1932); *Walker v. Bruce,* 44 Colo. 109, 97 P. 250 (1908).

██ A constructive trust is a creature of equity and springs from a desire to prevent the statute of frauds from being used as a shield which would allow a party to be unjustly enriched. *Bohm v. Bohm,* 9 Colo. 100, 10 P. 790 (1886). It is governed by broad principles which have been refined by centuries of use into specific remedies:

"[Constructive trusts] are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Botkin v. Pyle, supra.*

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 122 N.E. 378 (1919).

"A constructive trust is, then, the remedial device through which preference of self is made subordinate to loyalty to others." *Meinhard v. Salmon, supra.*

██ These maxims have been given force in particular cases through the development of rules which enable the courts to focus on the relationship between the parties to a conveyance. The court must determine whether that relationship is such that the statute of frauds should not be imposed so as to allow the holder of legal title to property to also retain the beneficial interest. A constructive trust is imposed when the law, by reason of its universality, is deficient:

"A constructive trust, unlike an express trust, is not a fiduciary relation. The circumstances which give rise to a constructive trust may, but do not necessarily, involve a fiduciary relation." 5 *Scott, supra* § 462.1.

██ Thus, the partners in a business enterprise may have such a relationship. *Meinhard v. Salmon, supra.* The obtaining of property by fraud may create a constructive trust which will require disgorgement of the wrongfully acquired property. *Langworthy v. Republic Mutual Ins. Co.,* 103 Colo. 393, 86 P.2d 610 (1939). Property which has been obtained by duress may, with the imposition of a constructive trust, be returned to the transferor. 5 *Scott, supra* § 468. In addition, this court has held that when one party holds a position of superiority over another, or when two parties have a "confidential relationship," a transfer of property

obtained as a result of an abuse of those relationships may be set aside. *United Fire v. Nissan Motor,* 164 Colo. 42, 433 P.2d 769 (1967); *Bohm v. Bohm, supra.*

On appeal, the parties to this case have focused on whether there was a confidential relationship between Page and the Clarks. This relationship, the Clarks allege, caused them "to relax the care and vigilance which [they] would and should have ordinarily exercised in dealing with a stranger." *United Fire v. Nissan Motor, supra.* The gravamen of their contention is that the confidence which they reposed in Page caused them to not reduce the oral agreement to reconvey to writing, as required by the statute of frauds. Section 38-10-106, C.R.S. 1973.

A confidential relationship arises when one party has justifiably reposed confidence in another. The confidential relationship may arise from a multitude of circumstances, but the transferor of the property must be justified in his belief that the transferee will act in the interests of the transferor. Transactions will only be set aside which are within the scope of confidential relationships. It must appear that the agreement to reconvey was not reduced to writing because of the confidential relationship. The burden of proving the existence of the relationship is on the one wishing to set aside the transaction.

If the existence of the confidential relationship has been established, the transaction may be set aside if that relationship has been abused. It is not necessary that the abuse of the confidential relationship be the procuring cause of the original conveyance. The refusal to perform the promise to reconvey is itself a sufficient abuse of confidence to allow the conveyance to be set aside. *See United Fire v. Nissan Motor, supra; Bohm v. Bohm, supra; Meinhard v. Salmon, supra; Sinclair v. Purdy,* 235 N.Y. 245, 139 N.E. 255 (1923); 1 *Scott, supra* §§ 2.5 and 44.2; 5 *Scott, supra* §§ 462.6 and 468; *Restatement of Restitution* § 166 and § 182(b) and comment (c) thereto; *Restatement of Trusts, Second,* § 2 and comments thereto; *Restatement of Contracts* § 497 and comment (b) thereto; *see also Ames, Constructive Trusts Based Upon the Breach of an Express Oral Trust of Land,* 20 *Harv. L. Rev.* 549 (1907); *Pound, The Progress of the Law,* 33 *Harv. L. Rev.* 420 (1919).

Against this background, the error of the court of appeals in supplanting the remedies made available through resulting and constructive trusts with an "equitable trust" becomes apparent. The equitable remedies which the court of appeals replaced have served the courts of this state for nearly a century. Those remedies have enabled the courts to prevent unjust enrichment for nearly half a millenium. *See, e.g., Moses v. MacFerlan,* 2 Burr. 1005 (1760). The experience and precedent thus gained are not lightly to be cast aside.

The court of appeals cited no authority for its action. None has been presented to us by the parties. The court of appeals expressed the

fear that a too rigid adherence to the prescribed elements of constructive and resulting trusts could present a "very real possibility" that a deserving party would be denied relief, because he could not fit his cause of action into the prescribed forms. Yet, we have been referred to no decision of this court in which a deserving party has been denied equitable relief because of a doctrinaire adherence to form. Rather, the doctrines of resulting and constructive trusts have proven to be extremely flexible.

The problems inherent in adopting the court of appeals' "equitable trust" are exemplified by the case before us. The court of appeals declared that, under the aegis of its new remedy, "The underlying theories [of resulting and constructive trusts], of course, remain the same." But, despite this assurance, and despite the court of appeals' new findings, the court of appeals has ordered Page to convey the property in question back to the Clarks, without the benefit of a finding that Page held on a resulting trust for the Clarks, or that he was guilty of fraud or an abuse of a confidential relationship. That part of the court of appeals' opinion which imposes an "equitable trust" upon Page is overruled.

## VI.
### The Burden of Proof

Section 13-25-127(1), C.R.S. 1973, provides:

*"Civil actions - degree of proof required.* (1) Any provision of the law to the contrary notwithstanding and except as provided in subsections (2) and (3) of this section, the burden of proof in any civil action shall be by a preponderance of the evidence."

The broad language of section 13-25-127(1) indicates that the legislature intended this directive to apply to all civil actions, whether in law or in equity. Section 13-25-127(1) is in direct conflict with the repeated statements of this court that a court which is employing its equitable powers can only impose an equitable remedy, such as a constructive trust, if it finds that the moving party has established the facts which justify such a remedy by "clear and convincing evidence." *See, e.g., Larson v. Chaussee,* 168 Colo. 437, 452 P.2d 30 (1969).[3] The trial court in this case found that the Clarks had not demonstrated the truth of their contentions by clear and convincing evidence.

---

[3] This court and the court of appeals have stated several different formulations of the burden of proof which should govern actions in equity. *See Larson v. Chaussee, supra* ("clear and convincing"); *Greathouse v. Jones,* 167 Colo. 406, 447 P.2d 985 (1968) ("clear, precise and indubitable"); *Hinshaw v. Hinshaw,* 148 Colo. 262, 365 P.2d 815 (1961) ("clear and satisfactory"); *Botkin v. Pyle,* 91 Colo. 221, 14 P.2d 187 (1932) ("evidence must be clear, strong, unequivocal, unmistakeable, and must establish the fact . . . beyond a doubt"); *Morrison v. McCluer,* 27 Colo. App. 264, 148 P. 380 (1915) (does the evidence "fairly germinate a doubt"); *Tourtelotte v. Brown,* 4 Colo. App. 377, 36 P. 73 (1894) ("clear, strong, satisfactory and convincing"). A review of these cases indicates that in cases such as the one before us, the standard by which evidence has been weighed has been "clear and convincing"; in the sense that the evidence must establish that the truth of the contention to be proved is "highly probable."

The difference between the requirements imposed by these two burdens of proof has been succinctly stated. Proof of a fact "by a preponderance of the evidence" means "proof which leads the [trier of fact] to find that the existence of the contested fact is more probable than its nonexistence." *McCormick, The Law of Evidence,* 2d Edition, West 1972 (§ 339). Proof by "clear and convincing evidence" is proof which persuades the trier of fact "that the truth of the contention is 'highly probable.'" *Id.* at § 340.

The court of appeals applied section 13-25-127(1), C.R.S. 1973, in the case before us. It held that the trial court should have judged the evidence presented in the present action by the "preponderance of the evidence" standard. In so holding, the court of appeals assumed, without discussion, that it was within the legislature's power to declare that, after the enactment of section 13-25-127(1), C.R.S. 1973, the burden of proof in all cases, which call into play a court's equitable powers, would henceforth be "a preponderance of the evidence."

The rulemaking power of this court is spelled out in Article VI, Section 21 of the Colorado Constitution:

*"Rule-making power.* The supreme court shall make and promulgate rules governing the administration of all courts and shall make and promulgate rules governing practice and procedure in civil and criminal cases, except that the general assembly shall have the power to provide simplified procedures in county courts for claims not exceeding five hundred dollars and for the trial of misdemeanors."

Whether this provision is viewed as a grant of power which would not otherwise exist, *see Peterson, Rule Making in Colorado: An Unheralded Crisis in Procedural Reform,* 38 *U. Colo. L. Rev.* 137 (1965), or as a declaration of the inherent powers of the judicial branch of government, *see Kolkman v. People,* 89 Colo. 8, 300 P. 575 (1931), it is clear that the power to make "rules governing practice and procedure in civil and criminal cases" lies with this court. *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978). It is also unquestioned that this rulemaking power includes the power to make procedural rules of evidence. *Id.* at 278; *see also* 1 *Wigmore on Evidence,* 3rd Edition § 7(c) (1977 Supp.). What is not clear is whether a particular rule or statute is "procedural" and thus within the jurisdiction of this court, or "substantive," and thus within the province of the legislature. We are, of course, admonished that the exercise of our power to declare a legislative enactment to be unconstitutional which attempts to regulate the practice and procedure of the courts is to be reserved for those enactments which cannot be reconciled with the constitution. *People v. McKenna, supra* at 279.

No definitive line can be drawn between those rules or statutes which are procedural and those which are substantive. A particular rule may be procedural in one context, substantive in another. The proper focus of

inquiry has been stated in many ways. If the focus is on the proper functions of the judicial branch of government, this court has stated that:

"If the purpose of [a rule's] promulgation is to permit a court to function and function efficiently, the rule-making power is inherent unless its impact is such as to conflict with other validly enacted legislative or constitutional policy involving matters other than the orderly dispatch of business." *Id.* at 277.

If a statute or rule is viewed from the standpoint of the impact of a legislative enactment, other considerations become relevant:

"As the underlying social policy varies, so does the meaning of the term. The question is: In view of the purpose of [the legislature] in making the grant, how shall we construe [the enactments]? Does this change in the rights of plaintiffs involve so important a question of social policy that it ought to be left for [the legislature] to change? If so, it should be classified as 'substantive' within the meaning of the word in this statute." Cook, *The Logical and Legal Bases of the Conflict of Law,* Harvard University Press, 1942 (p. 188).

However, we need not resolve the difficult question of whether section 13-25-127(1), C.R.S. 1973, involves a substantive or procedural matter. We are in agreement with the legislature that the burden of proof governing actions, such as the one before us, should be changed from the requirement that the contentions alleged by the moving party must be proved by "clear and convincing evidence." *See* footnote 3, *supra,* and accompanying text. We have concluded that the party attempting to set aside a transaction on equitable grounds should only be required to prove the truth of his contentions by a "preponderance of the evidence." This will serve to broaden the powers of the courts to prevent unjust enrichment.

"[T]here would seem to be no good reason why [proof by clear and convincing evidence] should be required. If the plaintiff offers evidence that the defendant has by fraud, undue influence or mistake acquired the title to property, it would seem that he should be permitted to enforce a constructive trust of the property when he proves the facts by the preponderance of evidence. The same thing should be true where the constructive trust arises from the abuse of a fiduciary relation, or where the plaintiff seeks to follow his property into a product in the hands of a wrongdoer, or where on other grounds he claims that the defendant holds property upon a constructive trust for him." 5 *Scott, supra* § 462.6.

*Accord, Cornwell v. Cornwell,* 116 N.H. 205, 356 A.2d 683, 686 (1976); *Armel v. Crewick,* 71 N.J. Super. 213, 176 A.2d 532 (1961); *MacKenzie v. Fritzinger,* 370 Mich. 284, 121 N.W.2d 410 (1963).

The court of appeals was thus correct in its conclusion that the trial court should have applied the less onerous standard in the case before us.

 Accordingly, the decision of the court of appeals is reversed, and the cause is remanded to the trial court for new findings to determine whether the Clarks have proven, by a preponderance of the evidence, that a constructive trust for their benefit on the property in question should be imposed upon Page.

MR. JUSTICE GROVES concurs in the result.

MR. JUSTICE CARRIGAN does not participate.

MR. JUSTICE GROVES concurring in the result.

I think there is a viable distinction between "clear and convincing" and "preponderance." If I had been a member of the General Assembly at the time section 13-25-127(1), C.R.S. 1973 was enacted, I would have voted against it. Nevertheless, I regard the legislative resolution of burden of proof in this respect as binding upon us.