**COLORADO DIVISION OF WILDLIFE, Colorado Wildlife Commission, and Department of Resources, State of Colorado, Plaintiffs–Appellees,**

v.

**Mark T. COX, III and William S. Cox, Defendants–Appellants.**

**No. 91CA1778.**

Colorado Court of Appeals, Div. III.

Nov. 19, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Steven O. Sims, Asst. Atty. Gen., Denver, for plaintiffs-appellees.

David J. Plasters, Greeley, Stephen S. Boynton, Vienna, VA, for defendants-appellants.

Opinion by Judge SMITH.

Defendants, Mark and William Cox, appeal the judgment entered by the trial court declaring their red deer, Barbary sheep, ibex, and hybrids thereof, to be a class 3 public nuisance and subjecting defendants to various abatement orders. We affirm.

Defendants operate an exotic wildlife ranch and hunting operation in northern Colorado. In connection therewith, they own, among other animals, red deer, Barbary sheep, and ibex goats, all animals not originating naturally in Colorado.

In 1988, plaintiffs, the Division of Wildlife, the Colorado Wildlife Commission and the Department of Natural Resources, initiated this action against defendants in which they alleged that defendants had failed, contrary to plaintiffs' regulations and order, to contain their animals within the physical boundaries of their ranch, a misdemeanor under § 33–6–114(3), C.R.S. (1992 Cum.Supp.) and a "public nuisance"

under Department of Natural Resources Regulation 1107.b, 2 Code Colo.Reg. 406–8. That regulation at the time pertinent to this controversy, provided:

> Domesticated or exotic wildlife which are illegally possessed or have escaped the owner's control and which are determined by the division to be *detrimental to native wildlife*, habitat or other wildlife resources by threat of predation, the spread of disease, habitat competition, interbreeding with native wildlife, or other significant damage, may be seized, captured or, where necessary, destroyed by the division or any peace officer for the purpose of protecting and preserving Colorado's wildlife and their environment. The division shall consider such wildlife to be a *public nuisance* and seek to hold the owner thereof responsible for any costs incurred in recovering, maintaining, or disposing of such wildlife, as well as any damages to the state's wildlife resources under appropriate statutory and common law.... (emphasis added)

Accordingly, plaintiffs sought a judgment declaring defendants' animals a "public nuisance"; an injunction restraining and enjoining defendants from continuing to violate applicable statutes, plaintiffs' orders, and regulations; and an order permitting plaintiffs, if defendants' animals remained unconfined, to remove, correct, and abate the public nuisance.

At trial before the court, it heard evidence on the issue of whether Regulation 1107.b applied to defendants' animals. Following two days of testimony, the trial court ruled in favor of plaintiffs, specifically declaring defendants' animals to be nonnative, or exotic wildlife, subject to, and in violation of, plaintiffs' regulatory authority and, hence, a class 3 public nuisance.

I.

Defendants contend that the trial court erred in finding and concluding that their animals were, in the first instance, subject to regulation by plaintiffs. We disagree.

The crux of defendants' argument is that their animals are livestock and, thus, are not "non-native or exotic wildlife" subject to plaintiffs' regulatory authority.

The trial court rejected this argument, concluding that defendants' animals fit squarely within the statutory definition of "wildlife" set out in § 33–1–102(51), C.R.S. (1992 Cum.Supp.) and that they also constituted "non-native wildlife" or "exotic wildlife" as defined in § 33–1–102(29.5), C.R.S. (1992 Cum.Supp.). We perceive no error in the trial court's determination.

Section 33–1–102(29.5) states:

'Nonnative wildlife' or 'exotic wildlife' means those species, subspecies, and hybrids of wildlife not originating naturally, either presently or historically, in Colorado, except those which have been introduced into the wild in Colorado by the division or classified as native wildlife by the commission.

Section 33–1–102(51) states:

'Wildlife' means wild vertebrates, mollusks, and crustaceans, whether alive or dead, including any part, product, egg, or offspring thereof, that exist as a species in a natural wild state in their place of origin, presently or historically, except those species determined to be domestic animals by rule or regulation by the commission and the state agricultural commission. . . .

The record reveals that no less than three experts testified that the animals in question were, in their opinions, "non-native" or "exotic" wildlife. Moreover, two of these witnesses testified that consistent with the definition of "wildlife" found in § 33–1–102(51), the defendants' animals were specifically considered wildlife in their place of origin which was, neither presently nor historically, the State of Colorado. Furthermore, we are unaware of any determination by either the Wildlife or Agricultural Commissions to the contrary.

Under these circumstances, we conclude that there is ample evidence to support the trial court's finding and conclusion that as "non-native wildlife" or "exotic wildlife," the defendants' animals were subject to plaintiffs' rules and regulations. Hence,

this determination will not be disturbed on review. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

■ Defendants' argue that this conclusion ignores that their animals fall within the definition of "livestock" set forth in § 35–1–102(6), C.R.S. (1984 Repl.Vol. 14), an argument which *presumes* that jurisdiction over these animals must be solely with either the department of agriculture or the department of natural resources. This presumption is without merit.

Nonnative or exotic animals clearly have a potential to impact *both* the agricultural industry and wildlife resources of the state. Hence, it is not unreasonable to conclude that both departments would retain jurisdiction over animals such as those owned by defendants. Certainly, their use, as with any other animal, may vary and require different regulatory oversight. Indeed, we find support for "dual" jurisdiction over defendants' animals not only in the foregoing logic, but also in the General Assembly's *express* requirement under § 33–1–106(3), C.R.S. (1992 Cum.Supp.) that, in certain circumstances, the state agricultural commission review plaintiffs' regulations regarding wildlife under their jurisdiction. Accordingly, we hold our conclusion neither ignores nor conflicts with the statutory schemes set forth in titles 33 and 35 of the Colorado statutes.

## II.

■ Next, defendants contend the trial court erred in adopting the plaintiffs' finding that their animals were "detrimental to native wildlife" and, hence, a public nuisance. Again, we disagree.

The record reveals that the trial court concluded:

The evidence at trial established that the Wildlife Commission's and the Division of Wildlife's determination that red deer, Barbary sheep and ibex are detrimental to Colorado native wildlife was supported by substantial scientific evidence and this court will not substitute its judgment for that of the Colorado Wildlife Commission on this issue.

Defendants argue, in essence, that the trial court should have *independently* determined whether their animals were detrimental to Colorado wildlife. Such argument is without merit.

However, perhaps because an adjudicatory hearing had not occurred and, hence, a comprehensive evidentiary record on the issue had not been developed, the trial court took extensive testimony and considered documentary evidence on the effect which defendants' animals had, or would have, on Colorado wildlife.

This evidence, which was derived from numerous scientific publications and was comprised of testimony of Colorado and out-of-state experts on the impacts caused by red deer, Barbary sheep, and ibex, was more than sufficient to support the trial court's determination that there was "substantial evidence" for plaintiffs' conclusion that defendants' animals were "detrimental to Colorado native wildlife." Hence, we perceive no error in the trial court's adoption of plaintiffs' determination on this issue.

The judgment and orders are affirmed.

CRISWELL and ROTHENBERG, JJ., concur.