26CA0345 Peo in Interest of Powell 05-14-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0345
Arapahoe County District Court No. 25MH149
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Monique Powell,

Respondent-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE SCHUTZ
Freyre and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 14, 2026

---

Ron Carl, County Attorney, Meghan Rubincam, Senior Assistant County Attorney, Aurora, Colorado for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Monique Powell appeals the district court's order authorizing (1) a six-month extension of her certification for long-term care and treatment under section 27-65-110(5), C.R.S. 2025; and (2) the involuntary administration of medication. We affirm.

I. Background

¶ 2 Powell has a ten-year history of mental illness and psychiatric hospitalizations. Since February 2025, she has been receiving care and treatment for a mental health diagnosis of schizoaffective disorder, bipolar type. She has been an outpatient client of Aurora Mental Health & Recovery (AMHR) since April 2025 and subject to various court orders, most recently an August 2025 order granting long-term certification of Powell and the involuntary administration of her medications.

¶ 3 In January 2026, Powell's treatment providers at AMHR sought an extension of Powell's long-term certification along with an extension of the order authorizing medical personnel to involuntarily administer her medication. As pertinent to this appeal, the certification petition alleged that Powell is gravely disabled because of her mental illness. The petition seeking an order authorizing the involuntary administration of medications

asked the court to permit, as relevant here, the involuntary administration of Abilify, an antipsychotic medication, and three other drugs to address potential side effects.

¶ 4    Following an evidentiary hearing, at which the district court heard testimony from both Powell and one of her treating psychiatrists, Dr. Erin Smith, the court entered an order extending Powell's long-term care certification for six months and authorizing the involuntary administration of Abilify but denying the request for authorization to administer the remaining medications involuntarily.

¶ 5    The court found by clear and convincing evidence that Powell has a mental health disorder and is gravely disabled. And the court found that the People had clearly and convincingly established all four elements necessary for the involuntary administration of Abilify: (1) Powell is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in her mental health condition or to prevent the likelihood that she will cause serious harm to herself or others; (3) a less intrusive treatment alternative is not available; and (4) Powell's need for treatment is sufficiently

compelling to override any bona fide and legitimate interest she has in refusing treatment. *See People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).

## II. Discussion

¶ 6 Powell challenges the sufficiency of the evidence supporting the district court's order. In particular, she contends that the evidence was insufficient to support (1) a finding that she is gravely disabled and (2) the first and third *Medina* elements. We address each contention in turn.

## A. Standard of Review

¶ 7 When a party challenges the sufficiency of the evidence, we review the record as a whole — viewing it in the light most favorable to the People — to determine whether the evidence is sufficient to support the court's decision. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review de novo the court's conclusions of law but defer to its findings of fact, including the weight and credibility afforded to witness testimony, if supported by the record. *People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011); *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982); *see People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

## B. Extension of Long-Term Certification Order

¶ 8    Under specified circumstances, section 27-65-110 permits the professional in charge of a patient's long-term care and treatment to seek an extension of the order certifying such care and treatment. *See* § 27-65-110(5).  To grant the extension, a court must find by clear and convincing evidence that the patient has a mental health disorder and, as a result, is gravely disabled.  §§ 27-65-110(1)(a), (5), 27-65-113(1), C.R.S. 2025.  Evidence is clear and convincing when it "persuades the trier of fact that the truth of the contention is 'highly probable.'"  *People v. Taylor*, 618 P.2d 1127, 1136 (Colo. 1980) (quoting *Page v. Clark*, 592 P.2d 792, 800 (Colo. 1979)).

¶ 9    "Gravely disabled" means that, due to a mental health disorder, a person "is incapable of making informed decisions about or providing for [her] essential needs without significant supervision and assistance from other people."  § 27-65-102(17), C.R.S. 2025.  As a result, such a person "is at risk of substantial bodily harm, dangerous worsening of any concomitant serious physical illness, significant psychiatric deterioration, or mismanagement of the person's essential needs that could result in substantial bodily harm."  *Id.*  The supreme court has explained that a person is

4

gravely disabled if she is "unable to take care of basic personal needs." *Taylor*, 618 P.2d at 1134. Basic personal needs means "those fundamental necessities of human existence, such as food, shelter, clothing, and medical care, which an individual must obtain and maintain in order to live safely." *Id.*

¶ 10    Powell maintains that the evidence does not support the district court's finding that she is gravely disabled because the record establishes that she "has made substantial and sustained progress in her mental health, functioning, and independence" and demonstrates "stability, insight[,] and a commitment to continued treatment," all of which "support[s] a determination that she is capable of managing her affairs and meeting her essential needs without involuntary intervention." She specifically points to Dr. Smith's testimony that she "looks terrific"; appears well-dressed and appropriately groomed; "look[ed] the best she's ever looked" at an appointment two weeks before the hearing; and has improved in the areas of speech, eye contact, motor activity, anxiety, irritability, memory, attention, and insight.

¶ 11    True, Dr. Smith so testified. And the district court acknowledged that Powell "seems like she's proceeding forward,

doing a little better than she was even last time that we met." However, Dr. Smith testified that, although she was seeing improvements, she wanted to see consistency over time, "not one visit," particularly as to Powell's insight into her mental health condition and her judgment. Dr. Smith further testified that, in the year she had known Powell, "the majority of her responses have shown poor insight into her illness and her need for medicating that illness." Thus, Dr. Smith "worr[ied] that [Powell] would not be able to take care of herself if given total independence right now."

¶ 12 The court credited Dr. Smith's testimony, finding that, "in her medical expertise," she "just does not believe . . . that [Powell is] there yet." Because the court's finding is supported by the record, we cannot conclude that Powell's progress is, as she asserts, sustained and substantial. *See Ramsey*, ¶¶ 32-38 (deferring to trial court's "gravely disabled" findings because they were supported by the record).

¶ 13 In determining that Powell "is and continues to be gravely disabled," the court noted that she continues to be "in need of help." The court found that she relies on her mother to assist her with housing and is "not providing housing for herself at this time."

The court also noted that, while testifying, Powell appeared to defer to her mother's opinion when asked certain questions. And the court simply did not "believe" that Powell would continue to take her medicine or seek therapy for her mental health disorder absent a certification order.

¶ 14    The record supports these findings and therefore the court's conclusion that Powell is gravely disabled. *See id.* Powell herself testified that she relies on her mother to provide housing and that she works with an AMHR caseworker, who helps with finding employment and vocational rehabilitation. Asked a question about whether her mental health had improved, Powell deferred to her mother's judgment, saying, "I wish my mom was here, because she can help out a lot more if she came before." Powell further testified that the Colorado Coalition for the Homeless is assisting her with "look[ing] for jobs and get[ting] a place [in] the program." Although the record contains indications of Powell's aforementioned progress and increasing ability to care for herself and her son, it nonetheless supports the court's grave disability determination because it reflects that Powell still needs significant supervision and

assistance from other people to make informed decisions about and provide for her essential needs.

### C. The First *Medina* Element: Incompetent to Participate in the Treatment Decision

¶ 15 Under the first *Medina* element, the district court may not order the forced medication of an involuntarily committed patient unless it is satisfied that the patient's mental illness has so impaired her judgment as to render her incapable of participating in decisions affecting her health. *Medina*, 705 P.2d at 973.

¶ 16 Powell contends that the court erred in determining that the first *Medina* element was supported by clear and convincing evidence because, among other things, her testimony established a "demonstrated understanding of her condition," along with a willingness to voluntarily take Abilify.

¶ 17 But the district court disbelieved Powell's testimony that she would continue to take Abilify on a voluntary basis, and we are not free to disregard this credibility determination. *See R.C.*, ¶ 7 ("The district court, as fact finder, has discretion to determine the credibility of the witnesses; the sufficiency, probative effect, and

8

weight of the evidence; and the inferences and conclusions to be drawn from it." (citation modified)).

¶ 18    Likewise, the court found that there wasn't a clear indication that Powell understood why she needed to take Abilify. She was unable to clearly express that she has a mental illness for which she needs medication. Asked whether she has a mental health disorder, Powell testified, "Sometimes." Questioned about whether she believes she has schizoaffective disorder, she answered, "I don't know. I'm still learning that." Similarly, when asked whether she thought she would "get bad without taking Abilify," she responded, "No." She also testified that she did not believe that taking Abilify would help her remain in the community and take care of herself and her son.

¶ 19    Dr. Smith, whose testimony the court found credible, testified to the contrary — namely, that without medication, Powell would suffer a significant and long-term deterioration with degeneration of the brain and symptoms akin to dementia.

¶ 20    Given the evidence supporting the district court's concerns with Powell's lack of insight into both her need for treatment and the severity of her illness, along with the weight the court placed on

Dr. Smith's testimony, we cannot conclude that the evidence was insufficient to support the determination that Powell is incompetent to effectively participate in the relevant treatment decision.  *See People in Interest of D.N.W.*, 2024 COA 129, ¶ 20 (deferring to the court's determination of witness credibility and the weight afforded that testimony).

### D.    The Third *Medina* Element: No Less Intrusive Treatment Alternative

¶ 21    We likewise reject Powell's assertion that there was insufficient evidence to support the third *Medina* element.  This element "encompasses not only the gravity of any harmful effects from the proposed treatment but also the existence, feasibility, and efficacy of alternative methods of treating the patient's condition or of alleviating the danger created by that condition."  *Medina*, 705 P.2d at 974.

¶ 22    Powell asserts that her "willingness to engage in voluntary treatment presents a viable and less intrusive alternative to a court-ordered mandate."  But, as noted, the district court rejected, as not credible, Powell's testimony that she would continue to voluntarily take her medication in the absence of a court order.  Thus, the

record does not support her claim; instead, it supports the court's determination that there isn't any less intrusive treatment alternative available. Dr. Smith, whose testimony the court credited, so testified, and we may not disturb the court's credibility determination. *D.N.W.*, ¶ 20.

## III.  Disposition

¶ 23  The order is affirmed.

JUDGE FREYRE and JUDGE BROWN concur.