25CA1488 Peo in Interest of Powell 11-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1488
Arapahoe County District Court No. 25MH149
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Monique Powell,

Respondent-Appellant.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART

Division IV
Opinion by JUDGE JOHNSON
Harris and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

---

Ron Carl, County Attorney, Meghan Rubincam, Senior Assistant County
Attorney, Aurora, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Monique Powell appeals the district court's order authorizing (1) her certification for long-term care and treatment under section 27-65-110, C.R.S. 2025; and (2) the involuntary administration of medications.  We affirm in part and reverse in part.

## I.    Background

¶ 2    Powell has a history of mental illness and psychiatric hospitalizations spanning nearly a decade.  In February 2025, she was certified for short-term mental health treatment after she brought her five-year-old son to the hospital, believing that he needed oral surgery.  Several doctors at the hospital observed disorganization in Powell's thought process, and she was placed on a mental health hold.  During her hospitalization, a doctor diagnosed her with schizophrenia.  The short-term certification treatment included an order authorizing the involuntary administration of Haldol, Prolixin, and Thorazine as primary medications with Benadryl, Cogentin, and Ativan as side-effect medications.

¶ 3    She appealed the short-term certification order on grounds that the State had not proved by clear and convincing evidence that she was gravely disabled or that the State had proved the fourth

1

element of the four-part test from *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). A division of this court affirmed the short-term certification order involving all medications in *People in Interest of Powell*, (Colo. App. No. 25CA0504, May 8, 2025) (not published pursuant to C.A.R. 35(e)).

¶ 4    In March, Powell's short-term certification was extended for another three months, which authorized treatment with Abilify (as Powell had complained of side effects to Haldol and her treating physician discontinued it) with Prolixin as a backup medication. Powell appealed the extension of the short-term certification order; a division of this court affirmed the extension and continued treatment with Abilify but reversed the portion of the order authorizing the involuntary administration of Prolixin as a backup medication. The division reasoned that the doctor's nonspecific speculation that Abilify may not be effective treatment for Powell in the future was insufficient grounds to order Prolixin as a backup medication. *See People in Interest of Powell*, (Colo. App. No. 25CA0990, Aug. 14, 2025) (not published pursuant to C.A.R. 35(e)) (*Powell II*).

¶ 5    Powell currently has been receiving outpatient treatment at Aurora Mental Health & Recovery (the clinic), where her treating psychiatrist, Dr. Erin Smith (Dr. Smith), diagnosed her with schizoaffective disorder – bipolar type.

¶ 6    In July, Powell's treatment providers at the clinic filed petitions for long-term certification and the involuntary administration of medications.  The long-term certification petition alleged that Powell is gravely disabled as a result of her mental illness and that she stated she will not take the prescribed medications absent a court order.  The petition seeking the involuntary administration of medications asked the court to order two antipsychotic medications, Abilify and Prolixin; and three other medications — Ativan, Benadryl, and Cogentin — in the event of side effects.

¶ 7    Following an evidentiary hearing in August, at which the district court heard testimony from both Powell and Dr. Smith, the court entered an order certifying Powell for long-term care and authorizing the involuntary administration of the requested medications.  As pertinent here, the court found by clear and convincing evidence that Powell has a mental health disorder and is

gravely disabled. The court also found that the State had clearly and convincingly established all four *Medina* elements — namely, that (1) Powell is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in her mental health condition or to prevent the likelihood that she will cause serious harm to herself or others; (3) a less intrusive treatment alternative is not available; and (4) Powell's need for treatment is sufficiently compelling to override any bona fide and legitimate interest she has in refusing treatment. *Medina*, 705 P.2d at 973. Powell now appeals the long-term certification treatment order and the order authorizing the involuntary administration of medication.

## II. Standard of Review

¶ 8 When a party challenges the sufficiency of the evidence, we review the record as a whole and, viewing it in the light most favorable to the People, determine whether the evidence is sufficient to support the court's decision. *People in Interest of Ramsey*, 2023 COA 95, ¶ 23. We review de novo the court's conclusions of law but defer to the court's findings of fact, including the weight and credibility afforded to witness testimony, if supported by the record.

*People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011); *People in Interest of C.A.K.*, 652 P.2d 603, 613 (Colo. 1982); *see People in Interest of R.C.*, 2019 COA 99M, ¶ 7 ("The district court, as fact finder, 'has discretion to determine the credibility of the witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it.'" (citation omitted)).

## III.  Analysis

¶ 9     Powell challenges the sufficiency of the evidence supporting the district court's order.  In particular, she contends that the evidence was insufficient to support (1) a finding that she is gravely disabled and (2) the first and third *Medina* elements.  We address each contention in turn.

### A.    Certification for Long-Term Treatment

¶ 10    Under specified circumstances, section 27-65-110 permits the professional in charge of a patient's short-term certification and treatment to file a petition to certify the patient for long-term care and treatment.  *See* § 27-65-110(1); *see generally Perreira v. State*, 768 P.2d 1198 (Colo. 1989) (providing an overview of the certification process).  As relevant here, to authorize long-term

certification for mental health treatment, a court must find by clear and convincing evidence that the patient has a mental health disorder and, as a result, is gravely disabled.  §§ 27-65-110(1)(a), 27-65-113(1), C.R.S. 2025.  Evidence is clear and convincing when it "persuades the trier of fact that the truth of the contention is 'highly probable.'"  *People v. Taylor*, 618 P.2d 1127, 1136 (Colo. 1980) (quoting *Page v. Clark*, 592 P.2d 792, 800 (Colo. 1979)).

¶ 11     Powell asserts that the evidence does not support a finding that she is gravely disabled because it did not establish that she is unable to meet her own basic needs.

¶ 12     "Gravely disabled" means that, due to a mental health disorder, a person is incapable of making informed decisions about or providing for her essential needs without significant supervision and assistance from other people.  § 27-65-102(17), C.R.S. 2025.  As a result, such a person "is at risk of substantial bodily harm, dangerous worsening of any concomitant serious physical illness, significant psychiatric deterioration, or mismanagement of the person's essential needs that could result in substantial bodily harm."  *Id.*  The supreme court has explained that a person is gravely disabled if she is "unable to take care of basic personal

6

needs." *Taylor*, 618 P.2d at 1134. Basic personal needs means "those fundamental necessities of human existence, such as food, shelter, clothing, and medical care, which an individual must obtain and maintain in order to live safely." *Id.*

¶ 13    Dr. Smith testified that Powell needs assistance from others in meeting her essential needs. In particular, Dr. Smith noted that Powell lives with her mother, who holds a power of attorney and provides support and structure to Powell. Without her mother's assistance and prompting, Dr. Smith testified, Powell would not take her psychiatric medications, her psychosis would increase, and she would be unable to take care of herself and her child. Thus, in Dr. Smith's expert opinion, Powell is gravely disabled.

¶ 14    The district court found Dr. Smith credible. And Dr. Smith's testimony supports the court's finding that Powell is gravely disabled because, without help, she cannot meet her essential needs — in particular, her medical needs related to her psychiatric illness. Likewise, Dr. Smith's testimony supports the court's determination that Powell is unable to understand or make important medical decisions on her own, and, without the help her

mother provides, she will face significant deterioration in her mental health disorder.

¶ 15    Powell nonetheless challenges the order because, in her view, the record supports that she is taking care of herself and her child. The district court acknowledged that Powell appeared to have more linear responses to her counsel's questioning at the August hearing as compared to previous hearings. And at the same August hearing, Dr. Smith praised Powell for wanting to obtain employment. But Dr. Smith testified, and the court agreed, that Powell's improvements were only possible because Powell was on medications and that Powell did not appreciate the extent to which her mother and the clinic provided structure to ensure Powell stayed medicated.

¶ 16    Thus, notwithstanding Powell's assertions to the contrary, we conclude that sufficient evidence supports the court's determination that she is gravely disabled.

### B.    The First *Medina* Element: Incompetent to Participate in the Treatment Decision

¶ 17    Under the first *Medina* element, the district court may not order the forced medication of an involuntarily committed patient

8

unless it is satisfied that the patient's mental illness has so impaired her judgment as to render her incapable of participating in decisions affecting her health. *Medina*, 705 P.2d at 973.

¶ 18    Powell contends that the court erred in determining that the first *Medina* element was supported by clear and convincing evidence because Dr. Smith's testimony on this topic was "scant" and did not suggest that Powell's judgment was impaired. Rather, she claims, the testimony established only that she disagrees with Dr. Smith's assessment that she has a mental health disorder in need of medication.

¶ 19    But Dr. Smith detailed that, untreated, Powell's schizoaffective disorder would "build[] on itself, essentially causing brain damage over time, leading to early dementia." Yet Powell lacks "any insight into her mental illness and what it requires to be stable and take care of herself." Thus, the doctor opined, she is not competent to effectively participate in treatment decisions.

¶ 20    The court expressly credited Dr. Smith's testimony that Powell indeed has schizoaffective disorder and rejected Powell's contrary testimony as "biased" by her desire to simply be "left alone." Likewise, the court credited Dr. Smith's testimony that Powell has

no insight into the fact that she has a mental health disorder requiring treatment and does not understand the consequences of failing to treat it. Thus, the court concluded, she is unable to competently and effectively participate in her treatment.

¶ 21    Given the evidence supporting Powell's lack of insight into her need for treatment or the severity of her illness, in combination with the weight the district court placed on Dr. Smith's testimony, we cannot conclude that the evidence was insufficient to support the determination that Powell is incompetent to effectively participate in the relevant treatment decision. *See People in Interest of D.N.W.*, 2024 COA 129, ¶ 20 (deferring to the court's determination of witness credibility and the weight afforded that testimony).

### C.    The Third *Medina* Element: No Less Intrusive Treatment Alternative

¶ 22    Powell also challenges the sufficiency of the evidence supporting the third *Medina* element. This element "encompasses not only the gravity of any harmful effects from the proposed treatment but also the existence, feasibility, and efficacy of alternative methods of treating the patient's condition or of alleviating the danger created by that condition." *Medina,* 705 P.2d

at 974.  A less intrusive alternative is "an available treatment that has less harmful side effects and is at least as effective at alleviating a patient's condition as the proposed treatment." *Strodtman*, 293 P.3d at 133.

¶ 23     As she did in *Powell II,* Powell objects to the district court's authorization of Prolixin as a backup to Abilify.  She also objects to the authorization of Ativan, Cogentin, and Benadryl, which, the testimony established, are medications aimed at alleviating potential side effects from Prolixin.  We agree that the record does not support the authorization of Prolixin and these side-effect medications as a backup to Abilify.

¶ 24     Like the *Powell II* division, we define "primary medication" as one that the petitioner seeks to immediately administer to a respondent.  *Powell II*, ¶ 18.  And a "backup medication" is (1) of the same class as a primary medication and (2) one that the petitioner seeks to administer only if certain conditions arise.  *Id.*  We add that side-effect medications aimed only at treating potential side effects of a backup medication are also in the category of "backup medication."

¶ 25　　In *R.C.*, a division of this court concluded that "[t]he possibility that [a primary medication] may no longer be an effective treatment . . . at some unspecified time in the future, is insufficient to justify" an order authorizing backup medications. *R.C.*, ¶ 14. Although there are circumstances under which a backup medication might be warranted — for example, when there is a specific and articulable concern that the primary medication could be ineffective, based on the respondent's particular medical history, *D.N.W.*, ¶ 18 — we perceive no such circumstances here. Another circumstance may arise when the treating physician does not have knowledge as to which array of medications will most effectively treat the patient's symptoms; in that scenario, an order involuntarily administering a primary and backup medication may be justified. *See People In Interest of Ferguson*, 2025 COA 82, ¶ 28. But that circumstance is also not present here.

¶ 26　　At the August hearing, Dr. Smith testified that Powell has been taking Abilify every four weeks. The doctor indicated that Powell "has not complained of any side effects" from Abilify but said that "if she were to have major side effects" — such as certain known metabolic side effects — or "she just could not tolerate [Abilify], I

12

would ask to have the option of [Prolixin as] a backup." Dr. Smith further testified that Ativan, Cogentin, and Benadryl would only be needed to manage potential side effects from Prolixin, stating that she did not foresee a need for those three medications "while [Powell] is taking Abilify."

¶ 27 With this in mind, the district court authorized Prolixin, finding that, "if [Abilify] becomes ineffective" or "some side effects appear," Prolixin "is a reasonable alternative." It further found that, although Powell "is doing great on" Abilify, the three requested side-effect medications were appropriate in case "she does not" and "has one of these acute side effects that needs emergent treatment."

¶ 28 This record is analogous to *R.C.* because it contains only speculation that Abilify might become ineffective "at some unspecified time in the future." *R.C.*, ¶ 14. And this is insufficient to justify an order authorizing backup medications.

¶ 29 We acknowledge that Dr. Smith testified she had been told by Powell's mother that the mother noticed Powell was displaying more irritability and less grooming during the last week before her Abilify injection. But Dr. Smith did not opine that this meant a switch to Prolixin was imminent or necessary; rather, she noted that "we can

13

increase the frequency of the [Abilify] shot to every three weeks" instead of every four. Likewise, although Powell testified that she was feeling more drowsy on Abilify than she initially had, the district court did not credit this as a reason for authorizing Prolixin as a backup medication. Instead, the court identified drowsiness as an acceptable side effect of Abilify as compared to the likely brain damage that would occur if Powell were to remain untreated.

¶ 30 Accordingly, we conclude that insufficient evidence supports a conclusion that Abilify alone is not a less intrusive treatment than Abilify and Prolixin. And because the testimony establishes that the three side-effect medications are aimed only at treating the potential side effects of Prolixin, we likewise conclude that their authorization rests on insufficient evidence.

## IV. Conclusion

¶ 31 The order is affirmed as to the long-term certification and the involuntary administration of Abilify. It is reversed, however, insofar as it authorizes Prolixin and the three side-effect medications as "backup" medications.

JUDGE HARRIS and JUDGE SCHOCK concur.